No. 98,038

STATE OF KANSAS, *Appellee*, v. NICHOLAS ADAMS BENNETT, *Appellant*.

(200 P.3d 455)

Opinion filed January 30, 2009.

*Patrick H. Dunn,* of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Daryl E. Hawkins,* assistant county attorney, argued the cause, and *Paul J. Morrison,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Nicholas Bennett was convicted of possession of methamphetamine and placed on probation. He appealed from one of the conditions of his probation, which required him to submit to random, suspicionless searches by community corrections or law enforcement officers. The Court of Appeals held that this condition was unconstitutional and unenforceable. *State v. Bennett,* 39 Kan. App. 2d 890, 185 P.3d 320 (2008). We agree and affirm the Court of Appeals' reversal of the district court's finding that the probation condition was constitutional.

FACTS

Nicholas Bennett pleaded guilty to possession of methamphetamine in October 2006. The State recommended that Bennett be placed on probation. As a condition of that probation, the State proposed that Bennett submit to random searches without probable cause or further court order. Before sentencing, Bennett filed a written objection to this proposed condition, arguing that United States Supreme Court precedent demands that such searches be supported, at a minimum, by reasonable suspicion.

The district court sentenced Bennett to 13 months in prison, suspended the sentence, and imposed an 18-month term of pro-

bation with mandatory drug treatment. The following exchange took place when the court considered the defendant's previous objection to the State's proposed probationary conditions:

"[DEFENSE COUNSEL:] So, my argument, Your Honor, is that the line, as it's now drawn, is that the probation officer or . . . law enforcement officers would have to have . . . at least reasonable suspicion or reasonable grounds to conduct a full-scale search . . . of a probationer's residence. . . .

. . . .

"UNIDENTIFIED SPEAKER: I would just clear some things up, maybe. . . . I'll read what's on a condition. Um, it just says that he shall allow a search . . . without warrant of the residence, physical person, or any property under your control upon request of any community corrections officer. This search may be conducted with the assistance of any law enforcement officer.

"THE COURT: And that's what it is. . . . I don't think there's anything in there that talks about reasonable grounds.

Ms. Taylor [the probation officer], is it your understand[ing] that you have that right to search that at anytime [sic]?

"MS. TAYLOR: Yes, it's a standard condition of probation.

"THE COURT: [T]hat's the Court order; that's always been the Court's order. When . . . you're on probation, you lose certain rights. One of the rights you lose, they—they let you come in the home. One of the . . . probation orders is that they allow you to come in the home.

Now, normally, you're not allowed to come in the home, because a person has a Fourth Amendment right. But in probation, if you extrapolate it out, they have the right to come in the home . . . to visit the defendant and to look around and see what's there. They have a right to come in the car and look in the car and look around. If the defendant is on probation, they lose those certain rights. So, conduct yourself accordingly."

The sentencing journal entry summarized the court's decision by including the following condition of probation: "Defendant is to submit to random searches deemed necessary that Community Corrections or Law Enforcement may conduct without probable cause or need for further Court order."

Bennett appealed, claiming that this condition of his probation violated his Fourth Amendment right to be free from unreasonable searches of his person and property. The Court of Appeals agreed in a published opinion authored by Chief Judge Gary Rulon, concluding that searches of probationers in Kansas must be supported by reasonable suspicion. *Bennett*, 39 Kan. App. 2d 890. Because the district court's order subjected the defendant in this case "to

nonconsensual, suspicionless searches by community corrections or law enforcement officers," the court found the probation condition in question to be "unconstitutional and unenforceable." 39 Kan. App. 2d at 896.

The State petitioned this court for review, arguing that the Court of Appeals' decision would thwart efforts by law enforcement officers to rehabilitate probationers since those officers would be required to have reasonable suspicion to search. The State also claimed that the United States Supreme Court's decision in *Samson v. California*, 547 U.S. 843, 165 L. Ed. 2d 250, 126 S. Ct. 2193 (2006), which upheld a California law stating that parolees could be searched without reasonable suspicion, should be interpreted to imply that probationers could be subjected to similar suspicionless searches. This court granted the State's petition.

On November 14, 2008, while the case was pending before this court, Bennett was discharged from the Kansas Department of Corrections and is no longer under state custody. Bennett's counsel subsequently filed a notice of mootness, claiming that because Bennett has completed his probation, the issues raised in his appeal have been rendered moot.

(1). SHOULD THE CASE BE DISMISSED AS MOOT SINCE BENNETT IS NO LONGER ON PROBATION?

Before considering the merits of Bennett's appeal, we must first consider whether the case was rendered moot when the defendant was discharged from probation in November 2008. As this court explained in *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, 504, 912 P.2d 716 (1996):

"The mootness doctrine is one of court policy which recognizes that it is the function of a judicial tribunal to determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive."

At the same time, we have recognized an exception to the mootness rule "where a particular issue, although moot, is one capable of repetition and one of public importance." 259 Kan. at 504.

Bennett argues that because he is no longer under state supervision and thus is no longer subject to the conditions of his probation, no justiciable controversy remains to be decided by this court. The State responds that the issue before the court in this case—whether probationers may be subjected to suspicionless searches—is an issue that will be repeated as a standard condition of probation and is important to this state's rehabilitative and protective functions in enforcing probation conditions.

We conclude that although Bennett is no longer subject to the conditions of probation in this case, the question as to the constitutionality of suspicionless searches is an issue that is " 'capable of repetition, yet evading review.' ". *Reece Shirley & Ron's, Inc. v. Retail Store Employees Union & Local 782,* 225 Kan. 470, 472, 592 P.2d 433 (1979) (quoting *So. Pac. Terminal Co. v. Int. Comm. Comm.,* 219 U.S. 498, 515, 55 L. Ed. 310, 31 S. Ct. 279 [1911]). The State has argued that the probation condition at issue in this case is a standard condition that is imposed in various jurisdictions across the state. This representation is supported by the district court's statements at sentencing that the suspicionless-search condition was "the Court order" and had "always been the Court's order." Moreover, given the length of time that may lapse between a defendant's placement on probation and this court's ultimate resolution of the defendant's appeal, we find that there is a real possibility that the issue presented here may evade our review.

Because the issue presented here is capable of repetition and of public importance, we consider the merits of Bennett's appeal. See *Board of Johnson County Comm'rs,* 259 Kan. at 504.

(2) DOES A CONDITION OF PROBATION THAT AUTHORIZES RANDOM, NONCONSENSUAL, SUSPICIONLESS SEARCHES VIOLATE A DEFENDANT'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND/OR § 15 OF THE KANSAS CONSTITUTION BILL OF RIGHTS?

The sole question presented in the State's petition for review is whether a condition of probation that subjects probationers to random, nonconsensual, suspicionless searches violates the United States and Kansas Constitutions. The Court of Appeals held that

such a condition violates the probationer's rights under the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights. The State argues that requiring articulable reasonable suspicion to conduct searches of probationers imposes an unreasonable burden on community corrections and law enforcement officers.

*Standard of Review*

K.S.A. 21-4610 sets forth a nonexclusive list of probation conditions that a court may impose. As the Court of Appeals noted in its decision, however, K.S.A. 21-4610 does not include any provision for searches (random or otherwise) of probationers. *Bennett*, 39 Kan. App. 2d at 896. The condition most akin to searches is perhaps K.S.A. 21-4610(c)(4), which states that probationers must "permit the court services officer or community correctional services officer to visit the defendant at home or elsewhere."

A district court has broad discretion to impose any conditions of probation that the court deems "proper." K.S.A. 21-4610(c); *State v. Starbuck*, 239 Kan. 132, 133, 715 P.2d 1291 (1986). Kansas courts have consistently recognized, however, that a district court does not have discretion to impose probationary conditions that violate a probationer's constitutional rights, absent a compelling state interest. See *State v. Evans*, 14 Kan. App. 2d 591, 593, 796 P.2d 178 (1990) (holding unconstitutional a condition of probation requiring attendance at a specific church; condition did not bear reasonable relationship to rehabilitative goals, protection of public, or nature of the offense); *State v. Mosburg*, 13 Kan. App. 2d 257, 260, 768 P.2d 313 (1989) (holding unconstitutional a condition of probation requiring a probationer to refrain from becoming pregnant).

The question before this court is whether the condition of probation imposed by the district court in this case regarding searches violated Bennett's constitutional rights. This is a question of law over which we have unlimited review. See *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006). If we determine, as the Court of Appeals did below, that the condition is unconstitutional, then the district court's imposition of that condition was a per se abuse of

discretion and must be reversed. If this court finds that the search condition does not violate the defendant's rights, then the court should affirm the district court's probation order.

*Analysis*

The Fourth Amendment to the United States Constitution provides in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The Kansas Constitution Bill of Rights, § 15, guarantees these same protections.

The touchstone of the Fourth Amendment is reasonableness. Thus, the Fourth Amendment does not protect against all searches and seizures, but only those that are unreasonable. The determination as to whether a search is reasonable turns on the circumstances surrounding the search. See *United States v. Knights*, 534 U.S. 112, 118-19, 151 L. Ed. 2d 497, 122 S. Ct. 587 (2001); *State v. Martinez*, 276 Kan. 527, 529, 78 P.3d 769 (2003); see *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 619, 103 L. Ed. 2d 639, 109 S. Ct. 1402 (1989).

The United States Supreme Court has explained that a person's reasonable expectations of privacy depend on the level of freedom that person enjoys in society. Persons under state control—such as probationers, parolees, and prisoners—exist on a " 'continuum' of state-imposed punishments" and thus enjoy more limited privacy than do free citizens. *Samson v. California*, 547 U.S. at 850. The Court has found that incarcerated prisoners have no reasonable expectation of privacy and can be searched at any time for any reason. *Hudson v. Palmer*, 468 U.S. 517, 530, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984). Parolees have some expectation of privacy, although that expectation is greatly diminished. Thus, the Court has upheld a California law requiring parolees to submit to suspicionless searches as long as these searches are not arbitrary or capricious. *Samson*, 547 U.S. at 854-56. Probationers have a greater expectation of privacy than parolees but enjoy more limited privacy rights than free citizens. See *Samson*, 547 U.S. at 850; *Knights*, 534 U.S. at 119.

This spectrum of privacy rights was developed by the United States Supreme Court over the course of almost 20 years in three cases: *Griffin v. Wisconsin*, 483 U.S. 868, 97 L. Ed. 2d 709, 107 S. Ct. 3164 (1987); *Knights*, 534 U.S. 112; and *Samson*, 547 U.S. 843. *Griffin* involved a challenge by a probationer to a Wisconsin regulation that permitted community corrections officials to search probationers' homes when the officials had " 'reasonable grounds' to believe [the residence contained] contraband—including any item that the probationer cannot possess under the probation conditions." 483 U.S. at 871 (citing Wis. Admin. Code HSS §§ 328.21[4], 328.16[1] [1981]). The Court held that the Wisconsin regulation did not violate the Fourth Amendment because the state's " 'special needs' "—as articulated through its probation regulations—"justif[ied] departures from the usual warrant and probable-cause requirements." 483 U.S. at 873-74.

In reaching this conclusion, the *Griffin* Court noted that probation "is simply one point (or, more accurately, one set of points) on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service." 483 U.S. at 874. For this reason, the Court explained that probationers "do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.' " 483 U.S. at 874 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480, 33 L. Ed. 2d 484, 92 S. Ct. 2593 [1972]).

Considering the particular needs of a state's supervisory role in probation, the Court concluded in *Griffin* that states are permitted "a degree of impingement upon privacy [during the course of such supervision] that would not be constitutional if applied to the public at large." 483 U.S. at 875. Thus, the Court found that enforcement of the Fourth Amendment's warrant requirement "would interfere to an appreciable degree with the probation system, setting up a magistrate rather than the probation officer as the judge of how close a supervision the probationer requires." 483 U.S. at 876. The Court also found that a probable-cause requirement would unreasonably disrupt the state's probationary goals. 483 U.S. at 878. Despite these findings, the Court emphasized that the "per-

missible degree" that a state's supervisory role may impinge upon probationers' expectations of privacy was "not unlimited." 483 U.S. at 875.

*Griffin* ultimately concluded that Wisconsin's regulation requiring "reasonable grounds"—equivalent to reasonable suspicion in Fourth Amendment terms—to search probationers for violations of probation conditions met the minimum standards required under the Fourth Amendment. 483 U.S. at 880. It should be emphasized that the Court found it unnecessary to consider whether *any* search of a probationer's home (by community corrections *or* law enforcement officers) need only satisfy a reasonable suspicion standard, because the type of searches challenged were "carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement." 483 U.S. at 887.

The unresolved question—whether warrantless searches of probationers by law enforcement officers are constitutional when such searches are supported by less than probable cause—was partially answered by the Court in *Knights*. In that case, the defendant was charged with committing various crimes while he was on probation. The defendant claimed that the evidence that formed the basis of the State's case should be suppressed because it was the fruit of a warrantless search of his apartment. *Knights*, 534 U.S. at 114-16. The defendant's previous probation order included a condition— almost identical to the condition of probation at issue in the present case—that the defendant would " '[s]ubmit his . . . person, property, place of residence, vehicle, [and] personal effects, to [a] search at anytime, with or without a search warrant, warrant of arrest[,] or reasonable cause by any probation officer or law enforcement officer.' " 534 U.S. at 114.

The United States Supreme Court held that because the search was supported by reasonable suspicion, it need not consider the constitutionality of the probation condition itself. Instead, the issue before the Court was "whether a search pursuant to this probation condition, *and supported by reasonable suspicion*, satisfied the Fourth Amendment." (Emphasis added.) 534 U.S. at 114.

Because the search at issue in *Knights* was conducted by a law enforcement officer (not a community corrections officer who sus-

pected a probation violation), the Court did not apply the special-needs doctrine discussed in *Griffin*, but instead evaluated the reasonableness of the search under the totality of the circumstances, "with the probation search condition being a salient circumstance." 534 U.S. at 118. The Court ultimately found that because probationers have a lesser expectation of privacy than do free citizens, and because the probation condition put the defendant on notice of his limited privacy rights, the defendant's "reasonable expectation of privacy" was "significantly diminished." 534 U.S. at 119-20. As such, a search based on reasonable suspicion did not violate the defendant's Fourth Amendment rights. 534 U.S. at 121-22.

It should be noted that the Court's decisions in *Knights* and *Griffin* involved searches of probationers based on reasonable suspicion of criminal activity and/or probation violations. Both cases held that searches based on reasonable suspicion satisfied the Fourth Amendment guarantee against unreasonable searches and seizures. Neither case, however, indicated whether a *suspicionless* search of a probationer would satisfy this constitutional requirement. The Court has not addressed this question to date.

The closest the Court has come to weighing in on this subject was its recent decision in *Samson*. That case involved a challenge by a parolee to a California law requiring *every* prisoner eligible for parole to " 'agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause.' " *Samson*, 547 U.S. at 846 (quoting Cal. Penal Code Ann. § 3067[a] [West 2000]). The question before the Court was "whether a suspicionless search, conducted under the authority of this statute, violates the Constitution." 547 U.S. at 846.

The Court ultimately held that the statute was constitutional under the Fourth Amendment. See 547 U.S. at 857. After discussing its opinions in *Griffin* and *Knights*, the *Samson* Court noted that "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." 547 U.S. at 850. *Samson* explained that " '[t]he essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abides by

certain rules during the balance of the sentence.' " 547 U.S. at 850 (quoting *Morrissey*, 408 U.S. at 477). Applying the totality-of-the-circumstances approach (rather than the special-needs rationale of *Griffin*), the Court concluded that searches under the California law were constitutional because parolees do not have recognizable privacy rights:

"Examining the totality of the circumstances pertaining to petitioner's status as a parolee, 'an established variation on imprisonment,' [citation omitted], including the plain terms of the parole search condition, we conclude that petitioner did not have an expectation of privacy that society would recognize as legitimate." 547 U.S. at 852.

The *Samson* Court rejected the parolee's argument that the California law permitting suspicionless searches was unreasonable in that it gave officers unbridled authority to search parolees and would lead to abuse. The Court noted that California law prohibits " 'arbitrary, capricious[,] or harassing' searches." 547 U.S. at 856 (quoting *People v. Reyes*, 19 Cal. 4th 743, 752, 80 Cal. Rptr. 2d 734, 968 P.2d 445 [1998]). The Court concluded that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee" under these circumstances. 547 U.S. at 857.

After *Samson*, it is clear that parolees may be subjected to suspicionless searches authorized by state law as long as such searches are not arbitrary or done for harassment purposes. It remains undecided whether probationers, who enjoy greater privacy rights than parolees but more limited rights than free citizens, may be subjected to similar searches; this is the question before this court in the present case. The United States Supreme Court has explained, however, that the degree to which searches may impinge on probationers' expectations of privacy is "not unlimited." *Griffin*, 483 U.S. at 875.

Before the Kansas Court of Appeals' opinion in this case, no Kansas court has considered whether suspicionless searches of probationers are constitutional. But see *State v. Uhlig*, 38 Kan. App. 2d 610, 617, 170 P.3d 894 (2007), *rev. denied* 286 Kan. 1185 (2008) (declining to answer whether reasonable suspicion was required in all searches of probationers because reasonable suspicion was pres-

ent in that case). The United States Court of Appeals for the Tenth Circuit, however, applying Kansas law, has weighed in on the related issue of parolee searches.

In *United States v. Freeman*, 479 F.3d 743, 748 (10th Cir. 2007), the Tenth Circuit held that a warrantless search of a *parolee* under Kansas law must be supported by reasonable suspicion. Although *Freeman* recognized that the United States Supreme Court had upheld a California law authorizing a suspicionless search of a parolee, the Tenth Circuit found that the Supreme Court's decision in *Samson* was based largely on the California law in question. The Tenth Circuit thus distinguished the circumstances in *Samson* from the facts before it, explaining:

> "*Samson* does not represent a blanket approval for warrantless parolee or probationer searches by general law enforcement officers without reasonable suspicion; rather, the Court approved the constitutionality of such searches only when authorized under state law. Kansas has not gone as far as California in authorizing such searches, and this search therefore was not permissible in the absence of reasonable suspicion." 479 F.3d at 748.

The Tenth Circuit reached this conclusion that Kansas law did not authorize suspicionless searches based on the lack of Kansas statutes authorizing such searches and on the Kansas Department of Corrections' (KDOC) Internal Management Policies and Procedures (IMPP), which provided at the time that special enforcement officers could " 'conduct a search of [a parolee or his or her property] without a warrant' " if the officer had " 'reasonable suspicion that evidence of a condition violation can be found on the person, or in the property in possession of the offender.' " *Freeman*, 479 F.3d at 744 (quoting Supplemental Vol. I, IMPP 14-164, p. 7). This provision has apparently been removed from the IMPP.

Nevertheless, the current IMPP requires parolees to agree to the following provision: "I agree to be subject to a search by parole officer(s) of my person, residence, and other property under my control." IMPP 14-104, Attachment A, p. 4. The discussion immediately following this provision explains: "My parole officer or a Special Enforcement Officer may conduct a search *if suspicion exists* that I have violated the conditions of my release or that a search is necessary to the performance of the parole officer's duties

in the supervision or enforcement of my release conditions." (Emphasis added.) IMPP 14-104, Attachment A, p. 4. Thus, even under the current version of the IMPP, parolees are told that searches must be based on a suspicion of a parole violation.

Although this court is not bound by a federal court's interpretation of Kansas law, the Tenth Circuit's reasoning in *Freeman* is persuasive. The Kansas Legislature has not authorized suspicionless searches of probationers or parolees. Kansas' procedures for parole supervision specifically inform parolees that they have an expectation that searches will not be conducted unless an officer has a (reasonable) suspicion that such a search is necessary to enforce the conditions of parole. Put another way, parolees in Kansas have an expectation that they will not be subjected to suspicionless searches.

It logically follows from this conclusion that because probationers have a greater expectation of privacy than parolees, searches of probationers in Kansas must also be based on a reasonable suspicion. Thus, the condition of Bennett's probation subjecting him to random, nonconsensual, suspicionless searches violates his rights under the Fourth Amendment and Kansas Constitution Bill of Rights.

The State argues that imposing a reasonable suspicion standard in all probation searches will thwart the purposes of community corrections officers, as corrections officials will no longer be permitted to search a probationer's residence or belongings when the officer conducts probation visits. This argument fails to recognize that although probationers' privacy rights are more limited than are the rights of free citizens, probationers do enjoy some expectation of privacy in their persons and property. Law enforcement efforts must be reasonably calculated with reference to the probationers' privacy rights. Reasonable suspicion is not an overly-burdensome standard of proof. See *Griffin*, 483 U.S. at 879-80.

Finally, the State argues that even if this court determines that searches of probationers must be supported at least by reasonable suspicion, we need not find that the particular condition of probation in this case violates the Fourth Amendment. In particular, the State argues that the condition of probation as set forth in the

journal entry authorizes searches that community corrections or law enforcement officers "deem[] necessary . . . without probable cause or need for further Court order." The State argues the journal entry does not specifically state that such searches may be conducted without reasonable suspicion.

This argument is not supported in the record. As the Court of Appeals explained in its opinion in this case, "the sentencing judge's comments and ultimate order during sentencing provide that either community corrections or law enforcement officers can conduct searches at any time for potentially any reason. A sentence does not derive its effectiveness from the journal entry but rather is effective when pronounced from the bench." *State v. Bennett*, 39 Kan. App. 2d 890, 185 P.3d 320 (2008). In addition, during argument before this court, the State indicated that its position was that the "deemed necessary" language in the journal entry authorized broader searches than would be permissible under a reasonable suspicion standard.

In summary, although probationers have more limited expectations of privacy than do free citizens, the United States Supreme Court has found that law enforcement's ability to search probationers is "not unlimited." *Griffin*, 483 U.S. at 875. Given probationers' expectations of privacy, community corrections officers or other law enforcement officers must have a rational, articulable suspicion of a probation violation or other criminal activity before subjecting the probationer's person or property to a search.

The condition of probation in this case, requiring that Bennett submit to random, suspicionless searches, violates the defendant's constitutional rights under the Fourth Amendment and § 15 of the Kansas Constitution Bill of Rights. The decision of the Court of Appeals is affirmed, and the decision of the district court is reversed. Because Bennett is no longer on probation, no remand is necessary.

MCFARLAND, C.J., not participating.

MARQUARDT, J., assigned.