No. 101,472

S.M., *Petitioner*, v. JOSEPH D. JOHNSON, Shawnee County
District Judge, and STATE OF KANSAS, *Respondents*.

(221 P.3d 99)

Opinion filed December 24, 2009.

*Marc A. Schultz*, of Topeka, argued the cause and was on the brief for the petitioner.

*Natalie A. Chalmers*, assistant district attorney, argued the cause, and *Chadwick J. Taylor*, district attorney, and *Steve Phillips*, assistant attorney general, were with her on the brief for the respondents.

The opinion of the court was delivered by

JOHNSON, J.: S.M. originally presented this matter to the court as a petition for writ of mandamus, requesting an order releasing her from juvenile detention. In addition, the petition sought an order directing the Honorable Joseph D. Johnson to follow the contempt procedure mandated by K.S.A. 20-1201 *et seq.*, as a condition precedent to enforcing the judge's "school rule," whereby a juvenile is ordered to serve 5 days in detention for each unexcused absence from school. Petitioner's request for release from detention is now moot. However, the district court is directed to conform

the implementation of any school attendance rule with the provisions of K.S.A. 2008 Supp. 38-2343, including the procedural requirements governing notice and hearing and the mandates governing the requisite findings for detaining a juvenile in a juvenile detention facility.

## FACTUAL AND PROCEDURAL OVERVIEW

S.M., a juvenile, was charged with multiple violations in two juvenile offender cases in the Shawnee County District Court; Judge Johnson presides over such cases. Following her first appearance on November 4, 2008, Judge Johnson released S.M. on pretrial supervision, which included an order to attend school with no unexcused absences or tardies as a condition of that release. S.M. subsequently pled nolo contendere to certain counts in return for the dismissal of the remaining counts in the two cases.

At the sentencing hearing, the court services officer (CSO) told Judge Johnson that S.M. had violated the school rule by accumulating three unexcused absences. In addition to sentencing S.M. on the pleas, Judge Johnson entered an order which stated: "[S.M.] must report to the Juvenile Detention Center on 11/25/2008 for school violation on pretrial supervision (15 days)." The detention was to be served during breaks, when school was not in session.

On November 26, 2008, S.M. filed this original mandamus action requesting her release from detention and seeking an order directing that Judge Johnson follow the contempt procedure set forth in K.S.A. 20-1201 *et seq.* S.M. argued that detaining her without a hearing violated her right to due process. The petition was subsequently amended to substitute the State of Kansas as a respondent, in lieu of the district attorney.

Pursuant to Supreme Court Rule 9.01(c) (2009 Kan. Ct. R. Annot. 73), this court directed each of the respondents to file an answer to the petition. After additional orders from this court directing a response, Judge Johnson filed an answer asserting that the matter was moot because S.M. was no longer detained. Alternatively, the judge argued that his actions were authorized by K.S.A. 2008 Supp. 38-2361(f)(2), which provides for a sanction house placement for a verifiable probation violation.

Subsequently, this court issued an order which acknowledged that the request for release from detention was then moot, but finding that the question of whether Judge Johnson had complied with due process in implementing the school rule was unresolved and capable of repetition. Consequently, this court requested that the parties submit additional briefing which specifically addressed the following questions:

"1. For what purpose and upon what authority was the juvenile ordered taken into custody and detained in the Juvenile Detention Center, *e.g.* as part of the original sentence upon adjudication; or as a sanction for probation violation; or as a sanction for violating the conditions of release prior to adjudication; or for some other purpose?

"2. What statutory procedures are mandated as a condition precedent to detaining the juvenile for the purpose identified in the first question?

"3. What process is constitutionally due the juvenile prior to ordering the detention for the identified purpose?

"4. What statutory procedures are mandated during the term of the Detention? See *e.g.* K.S.A. 38-2361(f)(1) (seven day review) and K.S.A. 38-2361(f)(2) (hearing within 48 hours)."

JURISDICTION AND STANDARD OF REVIEW

This court possesses jurisdiction for mandamus proceedings under Kan. Const. art. 3, § 3. Mandamus, as defined by K.S.A. 60-801, is: "[A] proceeding to compel some inferior court, tribunal, board, or some corporation or person to perform a specified duty, which duty results from the office, trust, or official station of the party to whom the order is directed, or from operation of law." Further, mandamus provides "authoritative interpretation[s] of the law" helpful to public officials in conducting public business. *Alpha Med. Clinic v. Anderson*, 280 Kan. 903, 916, 128 P.3d 364 (2006). Ordinarily, a district judge's discretion cannot be controlled by mandamus. However this court makes an exception where (1) a litigant, without a remedy on appeal, could be denied a legal right or privilege by the judge's order; or (2) the petition presents an issue of great public importance and concern. 280 Kan. at 916. Notwithstanding S.M.'s completion of her court-ordered detention, the questions surrounding the implementation of the "school rule" are capable of repetition, and it is appropriate for us to provide guidance to district courts on the requirements for ordering

juvenile detentions. See *State v. Bennett*, 288 Kan. 86, Syl. ¶ 2, 200 P.3d 455 (2009) (exception to mootness rule exists where a particular issue is capable of repetition and of public importance).

"The burden of showing a right to the relief sought is on the petitioner. Unless the respondent's legal duty is clear, the writ should not issue." *Comprehensive Health of Planned Parenthood v. Kline*, 287 Kan. 372, 410, 197 P.3d 370 (2008). To the extent that this court is required to engage in questions involving statutory interpretation, review of those questions is unlimited. See *Moser v. Kansas Dept. of Revenue*, 289 Kan. 513, 516, 213 P.3d 1061 (2009) ("Issues of statutory interpretation raise pure questions of law and are subject to this court's unlimited review.").

## The Parties' Additional Briefing

### *Purpose and Authority for Detention*

In her supplemental brief, S.M. continues to assert that Judge Johnson relied on the court's inherent contempt powers to detain her. However, respondent has never made that argument to this court, nor does the record support that contention. Accordingly, we will not discuss S.M.'s detention in the context of contempt of court, except to note that the exercise of contempt powers requires the court to strictly comply with the procedures set forth in K.S.A. 20-1204a, which it did not do in this case.

The district attorney's supplemental brief candidly admits that the purpose and authority for S.M.'s detention upon which respondent now relies differs from that alleged in the answer. Apparently, respondent noted that the school absences predated the imposition of probation and, therefore, the absences could not have been a K.S.A. 2008 Supp. 38-2361(f)(2) verifiable violation of the probation conditions, which had not yet been imposed. The respondent's justification is now based upon K.S.A. 2008 Supp. 38-2331(b)(10), that speaks to the detention of a juvenile who has violated "conditions of release," which respondent suggests includes preadjudication release.

S.M. does not dispute that she could have been taken into custody, pursuant to K.S.A. 2008 Supp. 38-2330(c), for a perceived violation of the conditions of her preadjudication release, or that

she could have been detained for violating a condition of release, pursuant to K.S.A. 2008 Supp. 38-2331(b)(10). Her complaint is that the court failed to follow the appropriate statutory procedures to effect such a detention.

Accordingly, the parties' fluid arguments have now coalesced; they agree that the purpose of S.M.'s detention was a response to her violating a condition of preadjudication release. Likewise, the parties apparently agree that the authority for such a detention must flow from K.S.A. 2008 Supp. 38-2331(b)(10).

*Mandated Statutory Procedures to Detain*

S.M. does not analyze the procedure required to initially detain her. She apparently concedes that the court could impose reasonable conditions on her preadjudication release and that the CSO assigned to supervise her could have caused her to be arrested and detained in a juvenile detention facility, pursuant to K.S.A. 2008 Supp. 38-2330(c) and 38-2331(b)(10), for violating those preadjudication conditions. Her complaint is that the court did not provide the hearing required by K.S.A. 2008 Supp. 38-2343(a) within 48 hours of being taken into custody.

Likewise, respondent summarily notes that K.S.A. 2008 Supp. 38-2331(b)(10) authorizes the placement of a juvenile in a detention facility for violating a condition of release, so long as that placement is pursuant to subsection (c) or (d)(1) of K.S.A. 2008 Supp. 38-2330 or subsection (e) of K.S.A. 2008 Supp. 38-2343. He then discusses the hearing required by K.S.A. 2008 Supp. 38-2343(e). The only mention of the initial requirements is a reference to the warrant or written statement requirements of K.S.A. 2008 Supp. 38-2330.

*Constitutional Due Process*

Although S.M. purported to raise a constitutional due process challenge in her petition, in her brief she makes a conclusory statement that "a judicial determination of probable cause must be afforded a person arrested without warrant to extend a restraint on his liberty." She does not relate that declaration to the procedures utilized in this case. See *Cooke v. Gillespie,* 285 Kan. 748, 758, 176

P.3d 144 (2008) (point incidentally raised, but not argued, deemed abandoned). Moreover, S.M. does not assert that the notice and hearing requirements set forth in the applicable statutes violate due process.

The respondent acknowledges that the detention of a juvenile implicates constitutional due process. However, citing to *Schall v. Martin*, 467 U.S. 253, 265, 81 L. Ed. 2d 207, 104 S. Ct. 2403 (1984), respondent argues that a juvenile's interest in liberty is qualified by "the recognition that juveniles, unlike adults, are always in some form of custody. [Citation omitted.]" Nevertheless, respondent contends that the juvenile's procedural due process rights are adequately protected by the existing statutory procedure. Consequently, our analysis will focus on compliance with the applicable statutes, without considering the constitutionality of those statutes.

### Procedures Mandated During Detention

Both parties provided cursory responses to this court's question as to the statutory procedures mandated during the term of a juvenile's detention. S.M.'s three-sentence response stated: "S.M. was entitled to a detention hearing upon her detention. A detention hearing was not held. K.S.A. 38-2361(f)(2) requires a detention hearing within 48 hours to determine whether continued detention is warranted."

Respondent utilized four sentences. First, respondent advised us that the juvenile code does not require "continued review or additional hearings once K.S.A. 2008 Supp. 38-2343(e) has been satisfied." Then, noting that the court's inquiry directed the parties' attention to K.S.A. 2008 Supp. 38-2361(f)(1) and (2), respondent stated that those provisions only apply when a juvenile is sent to a sanction house as part of the sentence or for violating the terms of the sentence and that neither situation applied in this case.

### REQUIRED PROCEDURES FOR DETENTION FOR VIOLATING THE SCHOOL RULE

S.M. complains that, pursuant to respondent's standing "school rule," a juvenile is automatically sent to the juvenile detention cen-

ter to serve 5 days in detention for each day that the juvenile has an unexcused absence or tardy at school. At oral argument, respondent's counsel argued that the record did not support the allegation that such a standing rule exists, albeit counsel did not affirmatively deny the rule's existence. Interestingly, respondent's brief stated that S.M. "was placed on pre-trial supervision with court services, which included the school rule," and further explained that "[t]he school rule is a rule that the juvenile will serve five days in juvenile detention for every unexcused absence or tardy from school." Moreover, the brief advised that S.M.'s compliance with the school rule was a condition for her preadjudication release. Therefore, given respondent's acknowledgement that the rule existed in this case, a review of the procedure required to effectuate such a rule is warranted.

To be clear, based on the parties' latest clarification of the circumstances of this case, we are addressing the placement of a juvenile in a detention facility for a violation of a condition of preadjudication release. We are not dealing with an order of contempt; we are not considering the procedure for a sanction house placement as part of a sentence; and we are not presented with a sanction for the violation of a probation condition. Likewise, it will be helpful to keep in mind that we are considering the specific subset of juveniles taken into custody who are ordered to be detained in a juvenile detention facility, rather than in a youth residential facility or some other temporary custody arrangement.

While one might well applaud the motive behind the fashioning of such a "school rule," its implementation must nevertheless comport with the applicable statutes governing the custody and detention of juveniles. K.S.A. 2008 Supp. 38-2330 addresses the first step in the process—taking a juvenile into custody. The first subsection defines when a law enforcement officer may take a juvenile into custody, such as when the officer observes the juvenile committing an offense, knows of the existence of a warrant, or when the officer has been given a written statement by a supervising CSO that the juvenile has violated the condition of the juvenile's release. K.S.A. 2008 Supp. 38-2330(a)(1)-(6).

Here, the parties focus on subsection (c), which provides:

"Any court services officer, juvenile community corrections officer or other person authorized to supervise juveniles subject to this code, may arrest a juvenile without a warrant or may request any other officer with power of arrest to arrest a juvenile without a warrant by giving the officer a written statement setting forth that the juvenile, in the judgment of the court services officer, juvenile community corrections officer or other person authorized to supervise juveniles subject to this code, has violated the condition of the juvenile's release. The written statement delivered with the juvenile by the arresting officer to the official in charge of a juvenile detention facility or other place of detention shall be sufficient warrant for the detention of the juvenile." K.S.A. 2008 Supp. 38-2330(c).

To paraphrase the provision, a supervising CSO can arrest a juvenile. Alternatively, a supervising CSO can request that a law enforcement officer (LEO) arrest the juvenile by giving the LEO a written statement that the CSO believes the juvenile has violated his or her conditions of release.

After a juvenile is taken into custody, the next step is to determine where the juvenile will be placed. In that regard, K.S.A. 2008 Supp. 38-2331 sets forth the criteria for detaining a juvenile in a juvenile detention facility. See K.S.A. 2008 Supp. 38-2302(l) (defining "juvenile detention facility"). K.S.A. 2008 Supp. 38-2331(b) provides that a juvenile may be placed in a juvenile detention facility if one or more of the enumerated conditions are met. The condition which the parties contend is applicable to this case is where the juvenile has violated the conditions of release. K.S.A. 2008 Supp. 38-2331(b)(10).

Apparently, the parties refer to these provisions to inform us that S.M.'s supervising CSO *could* have effected her arrest for the unexcused school absences, during the period of S.M.'s preadjudication release, and could then have caused her to be placed in a juvenile detention facility. However, that is not what happened in this case. S.M. was not taken into custody until after she appeared at the sentencing hearing, where the CSO verbally informed the court of S.M.'s violations of the "school rule" while on pretrial supervision. The court then executed a custody slip, dated November 25, 2008, and directed to the Shawnee County Department of Corrections, ordering that S.M. be forthwith taken into custody for a "violation of school rule" and held until November 30, 2008, at 3:00 p.m.

Nevertheless, S.M. does not contend that a judge is without authority to order that a juvenile be taken into custody for a violation of a condition of preadjudication release. The statutes certainly suggest that such authority exists. As noted, K.S.A. 2008 Supp. 38-2330(a) contemplates the existence of a warrant to authorize a LEO's arrest and detention of a juvenile. K.S.A. 2008 Supp. 38-2302(s) defines a warrant as "a written order by a judge of the court directed to any law enforcement officer commanding the officer to take into custody the juvenile named or described therein."

S.M.'s principal argument centers on the procedure which is statutorily mandated—and perhaps constitutionally required—after a juvenile has been taken into custody and detained. That statutory procedure is found in K.S.A. 2008 Supp. 38-2343, which provides:

"(a) *Length of detention.* Whenever a juvenile is taken into custody, the juvenile shall not remain in detention for more than 48 hours, excluding Saturdays, Sundays and legal holidays, from the time the initial detention was imposed, unless the court determines after hearing, within the 48-hour period, that further detention is necessary.

"(b) *Waiver of detention hearing.* The detention hearing may be waived in writing by the juvenile and the juvenile's attorney with approval of the court. The right to a detention hearing may be reasserted in writing by the juvenile or the juvenile's attorney or parent at anytime not less than 48 hours prior to trial.

"(c) *Notice of hearing.* Whenever it is determined that a detention hearing is required the court shall immediately set the time and place for the hearing. Except as otherwise provided by subsection (c)(1) of K.S.A. 2008 Supp. 38-2332, and amendments thereto, notice of the detention hearing shall be given at least 24 hours prior to the hearing, unless waived.

"(d) *Oral notice.* When there is insufficient time to give written notice, oral notice may be given and is completed upon filing a certificate of oral notice with the clerk.

"(e) *Hearing, finding, bond.* At the time set for the detention hearing if no retained attorney is present to represent the juvenile, the court shall appoint an attorney, and may recess the hearing for 24 hours to obtain attendance of the attorney appointed. At the detention hearing, if the court finds the juvenile is dangerous to self or others, the juvenile may be detained in a juvenile detention facility or youth residential facility which the court shall designate. If the court finds the juvenile is not likely to appear for further proceedings, the juvenile may be detained in a juvenile detention facility or youth residential facility which the

court shall designate or may be released upon the giving of an appearance bond in an amount specified by the court and on the conditions the court may impose, in accordance with the applicable provisions of article 28 of chapter 22 of the Kansas Statutes Annotated, and amendments thereto. In the absence of either finding, the court shall order the juvenile released or placed in temporary custody as provided in subsection (f).

"In determining whether to place a juvenile in a juvenile detention facility pursuant to this subsection, the court shall consider all relevant factors, including, but not limited to, the criteria listed in K.S.A. 2008 Supp. 38-2331, and amendments thereto. If the court orders the juvenile to be detained in a juvenile detention facility, the court shall record the specific findings of fact upon which the order is based.

"If detention is ordered and the parent was not notified of the hearing and did not appear and later requests a rehearing, the court shall rehear the matter without unnecessary delay.

"(f) *Temporary custody*. If the court determines that detention is not necessary but finds that release to the custody of a parent is not in the best interests of the juvenile, the court may place the juvenile in the temporary custody of a youth residential facility, some other suitable person willing to accept temporary custody or the commissioner. Such finding shall be made in accordance with K.S.A. 2008 Supp. 38-2334 and 38-2335, and amendments thereto.

"(g) *Audio-video communications*. Detention hearings may be conducted by two-way electronic audio-video communication between the juvenile and the judge in lieu of personal presence of the juvenile or the juvenile's attorney in the courtroom from any location within Kansas in the discretion of the court. The juvenile may be accompanied by the juvenile's attorney during such proceedings or the juvenile's attorney may be personally present in court as long as a means of confidential communication between the juvenile and juvenile's attorney is available."

The statute begins by clearly limiting the period of detention to a maximum of 48 hours (exclusive of weekends and holidays), unless within 48 hours of the initial detention the court conducts a hearing and finds that further detention is necessary. The limitation on the length of detention and the requirement for a detention hearing are applicable "[w]henever a juvenile is taken into custody." K.S.A. 2008 Supp. 38-2343(a). There is no stated exception for the circumstance where the juvenile is taken into custody pursuant to the court's order, rather than pursuant to a CSO arrest. Here, S.M. was ordered to be detained for 15 days, to be served at times that school was not in session, with the initial custody slip

providing for a 5-day period of detention. The court did not conduct a detention hearing within the first 48 hours of that detention.

Subsection (b) allows for a waiver of the detention hearing. However, the provision states that the waiver is to be "in writing by the juvenile and the juvenile's attorney with approval of the court." K.S.A. 2008 Supp. 38-2343(b). S.M. and her attorney deny having waived the detention hearing, and the record before us does not contain a court-approved, written waiver, signed by both S.M. and her attorney.

Subsections (c) and (d) discuss providing notice of any required detention hearing. Respondent's brief proffers the argument that in this case the sentencing hearing also served as the required detention hearing and that S.M. had plenty of prior notice that the sentencing hearing would be held. Obviously, notice that the court would be conducting a sentencing hearing does not put the juvenile on notice that the court would also be considering a theretofore unasserted allegation of a violation of preadjudication supervision and deciding whether detention beyond 48 hours for such a violation was necessary. However, we need not address in detail the procedural issue of notice. The remaining provisions of the statute reveal a more fundamental flaw in the implementation of the "school rule" which could not have been solved by strict compliance with the notice provisions.

Subsection (e) first clarifies that the juvenile has a right to have an attorney present for the detention hearing. Then, the statute directs the court to consider whether it can make one of two specific findings: either that the "juvenile is dangerous to self or others," or that the "juvenile is not likely to appear for further proceedings." K.S.A. 2008 Supp. 38-2343(e).

If the court makes the finding that the juvenile is dangerous, it has two options: detain the juvenile in a juvenile detention facility or detain the juvenile in a youth residential facility. See K.S.A. 2008 Supp. 38-2302(t) (defining "youth residential facility"). If the court makes the finding that the juvenile is unlikely to appear for further proceedings, it has three options: detain the juvenile in a juvenile detention facility; detain the juvenile in a youth residential facility; or release the juvenile on bond with or without conditions.

However, "[i]n the absence of either finding, the court *shall* order the juvenile released or placed in temporary custody as provided in subsection (f)." (Emphasis added.) K.S.A. 2008 Supp. 38-2343(e). Clearly, without a finding that the juvenile is dangerous to self or others or a finding that the juvenile is unlikely to appear for further proceedings, the court does not have the option of ordering the juvenile detained in a juvenile detention facility. In other words, a finding that the juvenile violated a condition of release, *e.g.*, the "school rule," is not sufficient, standing alone, to authorize the court to order 5 days' detention in a juvenile detention facility.

That is not to say that the fact the juvenile violated a condition of release has no bearing on the outcome of a detention hearing. K.S.A. 2008 Supp. 38-2343(e) directs the court to consider all relevant factors, including the criteria listed in K.S.A. 2008 Supp. 38-2331, when determining whether to place a juvenile in a juvenile detention facility. As noted, violating a condition of release is a criterion for juvenile detention facility placement set forth in K.S.A. 2008 Supp. 38-2331(b)(10).

However, the court does not get to the point of considering the criteria for juvenile detention facility placement until it has established that such a placement is an authorized option, *i.e.*, until it has made a specific finding either that the juvenile is dangerous or that the juvenile is unlikely to reappear. Only then does the court consider the K.S.A. 2008 Supp. 38-2331(b) criteria, when it is choosing among the authorized options: placement at a juvenile detention facility; placement at a youth residential facility; or, in the case of a juvenile unlikely to appear, release on bond.

Here, we question whether the court intended to hold a detention hearing in conjunction with the sentencing hearing. Nevertheless, even if we were to accept the argument that the sentencing hearing was intended to fulfill the detention hearing requirement of K.S.A. 2008 Supp. 38-2343, the court failed to properly document the findings required in a detention hearing. "If the court orders the juvenile to be detained in a juvenile detention facility, the court shall record the specific findings of fact upon which the order is based." K.S.A. 2008 Supp. 38-2343(e).

Moreover, in this instance, the record does not contain evidence to support the requisite finding. Respondent's brief makes the argument that a juvenile's failure to attend school is evidence that the juvenile is unlikely to appear for further proceedings. However, respondent does not explain what further proceedings remained to be conducted at which S.M. was unlikely to appear. The detention was ordered at the sentencing hearing. Presumably, barring a violation of the probation conditions, there would be no further proceedings. Further, respondent does not explain how detaining a juvenile for a fixed term of 15 days, to be served at periodic intervals when school was not in session, resolves the problem of a child who is not likely to appear for further proceedings.

Accordingly, in this case, the order to detain S.M. in a juvenile detention facility for a total of 15 days, with an initial detention of 5 days, was not supported by the requisite statutory findings. More generally, a local court rule which imposes a sanction of 5 days' detention in a juvenile detention facility for each violation of a preadjudication supervision condition prohibiting unexcused absences from school is not a statutorily authorized sanction. To detain the juvenile in a juvenile detention facility for more than 48 hours, exclusive of Saturdays, Sundays, and legal holidays, the court must conduct a detention hearing pursuant to K.S.A. 2008 Supp. 38-2343, and must make an initial finding, based on substantial and competent evidence, that the juvenile is dangerous to self or others or that the juvenile is not likely to appear for further proceedings.

Accordingly, we grant the petition for mandamus in part and direct that the respondent is to follow the statutory mandates governing the detention of a juvenile in a juvenile detention facility.