(209 P.3d 734)
No. 101,061

STATE OF KANSAS, *Appellant*, v. MICHAEL J. HAFFNER, *Appellee*.

Opinion filed June 19, 2009.

*Ty Kaufman*, county attorney, and *Steve Six*, attorney general, for appellant.

*Kevin Loeffler*, of Newton, for appellee.

Before MARQUARDT, P.J., MALONE and CAPLINGER, JJ.

CAPLINGER, J.: The State appeals the district court's order suppressing evidence seized in a warrantless search of the home of parolee Michael J. Haffner. Because the district court erred in finding the search of Haffner's home was not based upon reasonable suspicion, we reverse the district court's order suppressing the evidence and remand to the district court for further proceedings.

*Factual and procedural background*

Haffner was convicted of one count of manufacturing methamphetamine, one count of possession of methamphetamine, one count of burglary, and two counts of criminal restraint. The district court imposed a controlling sentence of 149 months' imprisonment, with a 36-month postrelease supervision period.

When Haffner was later paroled, he signed an acknowledgment form verifying that he received a copy of the Kansas Department of Corrections (KDOC) Offender Supervision Handbook; that he had been informed of the conditions of his release; and that the contents of the Handbook had been explained to him. The Handbook contains the following provision regarding searches:

"RELEASE CONDITION # 12: SEARCH

"I agree to:
"• Be subjected to a search by parole officers or designated law enforcement officer of my person, residence, and any other property under my control.
"Discussion:

"A Special Enforcement Officer may conduct a search if suspicion exists that you have violated the conditions of your release or that a search is necessary. Your Parole Officer may conduct a pat down, or plain view search as circumstances dictate."

Pursuant to the Handbook, Haffner also was required to obey all federal and state laws; prohibited from owning or possessing any firearms; prohibited from possessing, using, or trafficking in any controlled substances; and required to submit to urine tests as directed by his parole officer.

On December 4, 2007, Haffner provided a urine sample (UA) to his parole officer, Elvin Lee. Two days later, Lee learned that Haffner's UA tested positive for amphetamines. On December 19, 2007, an unidentified woman telephoned Lee and reported seeing

Haffner cooking methamphetamine in his house. The woman told Lee that she either already had reported or planned to report Haffner's activities to the sheriff's department.

Sometime prior to January 11, 2008, McPherson County Sheriff's Deputy Jeffrey Collins received an anonymous call on the sheriff's tip line indicating that Haffner might be manufacturing methamphetamine in his home and may also have been abusing his wife.

On December 28, 2007, Lee informed Special Enforcement Officer (SEO) Kevin Hays about Haffner's positive UA and the anonymous tip and requested that Hays conduct an investigation and/or a parole search. Hays then contacted the sheriff's department and learned from Deputy Collins about the anonymous tip regarding Haffner's possible drug activity and spousal abuse.

Accompanied by police and sheriff's officers, Hays went to Haffner's house on January 11, 2008. Hays knocked at the door and, while awaiting a response, he flipped open the lid of a trash cart near the front door. Hays could see an empty beer can in the cart, and he detected the strong smell of ether. Based on his experience, Hays surmised that the ether was related to methamphetamine manufacturing.

After Haffner's wife Tammy answered the door and reported that Haffner was not at home, Hays informed Tammy he was there to do a parole search and entered the house. In the subsequent search of the home, Hays found a handgun in a bedroom drawer and a small metal case containing several items which Hays recognized as drug paraphernalia. In the basement, Hays' eyes burned and his skin "kind of started to crawl." Hays testified that his reactions indicated the presence of a methamphetamine cook.

After securing the house, officers obtained a search warrant. In the subsequent search of Haffner's home, officers recovered a gassing generator, coffee filters, rock salt, a drain opener, rubber tubing, ether, methamphetamine, and a handgun.

Haffner was charged with one count of manufacturing methamphetamine with a prior conviction for manufacturing methamphetamine; one count of possession of methamphetamine; and one count of criminal possession of a firearm.

Haffner moved to suppress the evidence, claiming the initial warrantless parole search was not based upon reasonable suspicion in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and §15 of the Kansas Constitution Bill of Rights. Consequently, Haffner argued the evidence seized was "fruit of the poisonous tree" and should be suppressed.

After conducting an evidentiary hearing, the district court concluded the initial search of Haffner's home was not based on reasonable suspicion and granted Haffner's motion to suppress. The State has appealed.

*Was the Search of Haffner's Home Supported by Reasonable Suspicion?*

In this appeal, the State argues the district court erroneously concluded the search of Haffner's home was not supported by reasonable suspicion.

A. Standard of Review

When a defendant moves to suppress evidence on the grounds that his or her constitutional rights were violated, the State bears the burden to establish the lawfulness of the search or seizure. *State v. Ibarra*, 282 Kan. 530, 533, 147 P.3d 842 (2006).

Generally, we apply a dual inquiry in reviewing a district court's decision on a motion to suppress. We review the district court's factual findings using a substantial competent evidence standard, but we review de novo the court's ultimate legal conclusion drawn from those facts. See *State v. Huff*, 278 Kan. 214, 219, 92 P.3d 604 (2004).

However, when the material facts underlying the district court's decision are undisputed, the question of whether to suppress is a question of law subject to de novo review. See *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006).

B. Exception to Warrant Requirement for Search of a Parolee's Property

Under the Fourth Amendment to the United States Constitution and §15 of the Kansas Constitution Bill of Rights, individuals have

the right to be free from unreasonable governmental searches and seizures. *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007). Whether a search is reasonable is evaluated under the to- tality of the circumstances and with consideration of the degree to which a search intrudes upon an individual's privacy and the degree to which the intrusion is necessary to further legitimate govern- mental interests. *Samson v. California*, 547 U.S. 843, 848, 165 L. Ed. 2d 250, 126 S. Ct. 2193 (2006); *United States v. Knights*, 534 U.S. 112, 118-19, 151 L. Ed. 2d 497, 122 S. Ct. 587 (2001).

Special deference is given to the privacy of a person's home. *State v. Reno*, 260 Kan. 117, 128, 918 P.2d 1235 (1996). Generally, the State must have a warrant based on probable cause to search a person's home. See *Payton v. New York*, 445 U.S. 573, 586, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980) (a warrantless search of a home is per se unreasonable). Evidence obtained, either directly or indirectly, as the result of an unreasonable search is inadmissible and must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 484-87, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *Reno*, 260 Kan. at 129. Nevertheless, the warrantless search of a person's home may, under some circumstances, be deemed reasonable. See *Thompson*, 284 Kan. at 776 (listing several exceptions recognized in Kansas).

One such circumstance exists when the home being searched belongs to a parolee. Parolees have a greatly diminished expecta- tion of privacy, even in their homes, particularly when the parolee has been informed that he or she may be subject to property searches as a condition of release. Thus, the government's intrusion on a parolee's privacy may be supported by a diminished level of suspicion. See *Samson*, 547 U.S. at 850-57 (upholding California law requiring parolees to consent to random, suspicionless searches); *Knights*, 534 U.S. at 122 (upholding the warrantless search of a probationer's home that was supported by reasonable suspicion and authorized as a condition of probation); *Griffin v. Wisconsin*, 483 U.S. 868, 870-80, 97 L. Ed. 2d 709, 107 S. Ct. 3164 (1987) (concluding that the special needs of Wisconsin's probation system make the warrant requirement impracticable and justify a state regulation allowing the warrantless search of a probationer's home upon "reasonable grounds").

In Kansas, the search of a parolee's person or property is reasonable if it is supported by reasonable suspicion that the parolee has violated a condition of release and if it is conducted by a SEO. See *United States v. Freeman*, 479 F.3d 743, 748 (10th Cir. 2007) (distinguishing *Samson* on state law grounds and noting that KDOC rules require parolee searches to be supported by reasonable suspicion and conducted by an SEO); *State v. Bennett*, 288 Kan. 86, 97-98, 200 P.3d 455 (2009) (discussing *Freeman*; noting that Kansas law does not authorize suspicionless searches; citing KDOC procedures and concluding that parolees may not be subjected to suspicionless searches); KDOC Internal Management Policy and Procedure (IMPP) § 14-104 (explaining that parolees are subject to a search by a parole officer or SEO "if suspicion exists" that the parolee has violated a condition of release); IMPP § 14-110 (listing parole searches as a standard condition of release).

## C. Existence of Reasonable Suspicion

At the suppression hearing, the State argued reasonable suspicion to search Haffner's home was based upon: (1) Haffner's positive UA, and (2) the two anonymous calls indicating Haffner might be manufacturing methamphetamine in his home. Haffner countered that reasonable suspicion could not be based on the positive UA which occurred over a month before the search and two unsubstantiated anonymous phone calls.

Although the district court noted that the ultimate issue was "whether or not the defendant's prior dirty UA . . . taken together with the two anonymous calls . . . constituted reasonable suspicion," the court first considered the two anonymous calls in isolation. Because anonymous calls cannot support probable cause for a search, the district court reasoned that the two calls "standing alone" could not support reasonable suspicion. According to the district court, "[s]ome type of investigation by the parole officer or police must be done to establish at least some validity and/or reliability of the calls."

The district court then considered whether the positive UA was sufficiently reliable to establish reasonable suspicion when consid-

ered in conjunction with the two anonymous calls. The judge reasoned:

"I do not believe that the dirty UA, over a month before the search, necessarily supports the suspicion that the defendant was violating any terms of his parole in his home or that the Special Enforcement Officer would find any evidence of violation of his parole in his home. True, the dirty UA indicates a violation of the defendant's parole, however, the dirty UA test was in no way linked to the defendant's residence."

Ultimately, the court concluded that Haffner's positive UA taken together with the two anonymous calls did not establish reasonable suspicion.

Whether reasonable suspicion exists in a particular case is a question of law subject to de novo review. *State v. Moore*, 283 Kan. 344, 350, 154 P.3d 1 (2007) (citing *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 116 S. Ct. 1657 [1996]).

The determination of whether reasonable suspicion exists for suspecting a parole violation involves consideration of the quality and reliability of the information possessed by the parole officer, in light of the totality of the circumstances. *Freeman*, 479 F.3d at 749. However, because reasonable suspicion is a lesser standard of proof than probable cause, courts should not "insist upon the same degree of demonstrable reliability of particular items of supporting data, and upon the same degree of certainty of violation, as is required in other contexts." *Griffin*, 483 U.S. at 879. In *Griffin*, the United States Supreme Court explained that "it [is] reasonable to permit information provided by a police officer, whether or not on the basis of firsthand knowledge, to support a probationer search." 483 U.S. at 879-80.

Simply put, in order to establish reasonable suspicion for a parole search, a parole officer must merely be able to point to specific, articulable facts that would lead a reasonably objective parole officer to suspect that the parolee has violated a condition of his or her probation. See *Moore*, 283 Kan. at 354 (explaining the reasonable suspicion standard); see also *United States v. Trujillo*, 404 F.3d 1238, 1244-45 (10th Cir. 2005) (upholding the search of a parolee's residence where the parolee failed a drug test 4 months prior to the search, refused a drug test 1 day before the search, and a de-

tective had information from unknown sources that the parolee may be involved in drug dealing); *State v. Uhlig*, 38 Kan. App. 2d 610, 614-17, 170 P.3d 894 (2007), *rev. denied* 286 Kan. 1185 (2008) (upholding the search of a juvenile probationer's bedroom where a court services officer stopped by for a random compliance visit, the probationer consented to a bedroom search but then attempted to delay the officers from entering his bedroom, and the probationer admitted that he had tried to hide contraband in his room).

Here, the district court acknowledged that Haffner's use of drugs, as indicated by his positive UA, was a parole violation. Nonetheless, the court dismissed this factor on the ground that Haffner's positive UA did not necessarily indicate that drug usage was occurring in his home and the positive UA occurred over a month before the search.

Had the issue before the court been the existence of probable cause to search, the district court's analysis might be appropriate. Generally, a warrant based on probable cause is required to search a person's home, and the probable cause standard requires some nexus between the alleged criminal activity and the place to be searched. See *State v. Hicks*, 282 Kan. 599, 613-14, 147 P.3d 1076 (2006). However, this nexus requirement does not apply to the search of a parolee's home when the parole officer has reasonable suspicion to believe that the parolee has violated a condition of his or her release and the parolee has been informed that he or she is subject to property searches based on reasonable suspicion of a parole violation. See *Knights*, 534 U.S. at 122; *Griffin*, 438 U.S. at 870-80; IMPP § 14-104 (explaining that parolees are subject to a search by a parole officer or special enforcement officer "if suspicion exists" that the parolee has violated a condition of his or her release).

Nor can we agree that the saliency of the positive UA was significantly diminished by the passing of 1 month's time between the UA and the search. See, *e.g.*, *Trujillo*, 404 F.3d at 1245 (upholding search of the parolee's residence where the parolee failed a drug test 4 months prior to the search). The positive UA clearly provided reasonable suspicion that Haffner had violated a condition of his

parole, and that suspicion was all that was required to subject Haffner's person or property to a search.

Finally, we find error with the district court's conclusion that the two anonymous calls were not sufficiently reliable because the State presented no evidence that the officers established the reliability of the information or the callers.

In general, truly anonymous tips, standing alone, are insufficient to support reasonable suspicion. See *Florida v. J.L.*, 529 U.S. 266, 270-74, 146 L. Ed. 2d 254, 120 S. Ct. 1375 (2000) (declining to uphold a stop and frisk where the sole basis for the stop was an anonymous phone call indicating that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun); *Alabama v. White*, 496 U.S. 325, 330-32, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990) (upholding an investigatory traffic stop based on an anonymous phone call plus independent police work that corroborated the caller's information).

However, the degree of reliability necessary to support a parole search based on reasonable suspicion of a parole violation, like the parolee's expectation of privacy, is greatly diminished. See *Griffin*, 483 U.S. at 879-80 ("[I]t [is] reasonable to permit information provided by a police officer, whether or not on the basis of firsthand knowledge, to support a probationer search."); *Trujillo*, 404 F.3d at 1245 (considering detective's information from an unknown source that the parolee may be involved in drug dealing); *State v. Slater*, 267 Kan. 694, 697, 986 P.2d 1038 (1999) (considering the reliability of an anonymous tip in the context of a traffic stop and noting " 'that reasonable suspicion can arise from information that is less reliable than that required to show probable cause' ").

### D. Conclusion

In finding the officers lacked reasonable suspicion to conduct the search of Hafner's home, the district court erroneously discounted the two factors presented by the State: Haffner's positive UA, which provided a clear indication of a parole violation, and anonymous tips to two law enforcement agencies within 2 weeks of the positive UA suggesting Haffner could be manufacturing methamphetamine in his house. Taken together, these facts were

sufficient to establish reasonable suspicion of a parole violation, which is all that was required to search Haffner's home.

We reverse the district court's order suppressing the evidence and remand the case to the district court for further proceedings.

Reversed and remanded.