No. 111,897

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TONY TOLIVER,
*Appellant*.

SYLLABUS BY THE COURT

1.

When the material facts to a district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court exercises unlimited review.

2.

Interpretation of a statute is a question of law over which appellate courts have unlimited review.

3.

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. An appellate court must first attempt to ascertain the legislative intent through the statutory language enacted, giving common words their ordinary meanings.

4.

When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading

1

something into the statute that is not readily found in its words. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the legislature's intent.

5.

Where the legislature has demonstrated an ability to express its intent through clear statutory language, courts will not read that same intent into another statute where the legislature has omitted such language.

6.

As a general rule, under the Fourth Amendment to the United States Constitution, parolees may be subjected to suspicionless searches by parole officers as authorized by state law provided such searches are not arbitrary or done for harassment purposes.

7.

Pursuant to K.S.A. 2014 Supp. 22-3717(k)(2) parolees and persons on postrelease supervision are, and shall agree in writing to be, subject to search or seizure by a parole officer or a department of corrections enforcement, apprehension, and investigation officer, at any time of the day or night, with or without a search warrant and with or without cause. Nothing in this subsection shall be construed to authorize such officers to conduct arbitrary or capricious searches or searches for the sole purpose of harassment.

8.

K.S.A. 2014 Supp. 22-3717(k) defines the diminished privacy interests of Kansas parolees under the Fourth Amendment to the United States Constitution. Consistent with these diminished privacy interests, subsection (2) allows parole officers to subject parolees to suspicionless searches and seizures. The statute does not, however, empower parole officers to infringe upon the privacy expectations of parolees under the Fourth

2

Amendment by engaging in the suspicionless searches of their residence and any other property under their control as provided in the Kansas Department of Corrections' Conditions of Release for Post-Incarceration Supervision agreement.

Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed January 29, 2016. Reversed and remanded with directions.

*Brenda M. Jordan*, of Manhattan, for appellant.

*Charles Lee*, legal intern, *Barry Disney* and *Bethany C. Fields*, deputy county attorneys, *Barry Wilkerson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., BUSER and GARDNER, JJ.

BUSER, J.: Following a bench trial on stipulated facts, the district court convicted Tony Toliver, a parolee under the supervision of the Kansas Department of Corrections (KDOC), of marijuana possession and sentenced him to 6 months' probation with an underlying 60-day jail term.

On appeal, Toliver asks us to reverse his conviction. He contends the district court erroneously denied his motion to suppress the marijuana which was found in a search of his residence. Toliver asserts his rights under the Fourth Amendment to the United States Constitution were violated when KDOC parole officers and law enforcement officers searched his apartment without a warrant and without reasonable suspicion of a parole violation or criminal activity.

Upon our review, we hold that Toliver's Fourth Amendment rights were violated. The plain language of K.S.A. 2014 Supp. 22-3717(k) requires only that parolees agree to be subject to search or seizure. The "Conditions of Release for Post-Incarceration Supervision" (Parole Agreement) signed by Toliver, however, mandated not only a

3

search of the parolee but also his residence and property. These additional requirements were not statutorily authorized and were at variance with the legislature's formulation of what constitutes a reasonable expectation of privacy for Kansas parolees.

In order to comply with Fourth Amendment jurisprudence relating to the reasonableness of parolee searches and seizures, the legislature's formulation of a parolee's diminished privacy interests influences the contours of the Fourth Amendment. Because the Parole Agreement provided that Toliver was not only subject to suspicionless searches and seizures, as provided by Kansas law, but also to searches of his residence and property, we conclude the search of Toliver's apartment was beyond the authorization of K.S.A. 2014 Supp. 22-3717(k) and, therefore, violated the Fourth Amendment.

Accordingly, we reverse Toliver's conviction and remand the case to the district court to grant the motion to suppress evidence and for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

The search and seizure issue presented by this appeal has evolved since it was first considered by the district court in a pretrial motion to suppress evidence. For this reason, it is necessary to take a brief trip on the long and winding procedural road that brings us to resolve this particular legal issue on appeal.

After Toliver was charged with possession of marijuana, he filed a motion to suppress the contraband in district court. The motion asserted that on October 17, 2013, two KDOC parole officers and three Riley County detectives illegally searched Toliver's apartment. While acknowledging that in order to obtain release on parole Toliver had agreed to subject himself and his residence to warrantless searches, the motion claimed the search was only permissible under the Fourth Amendment if it was made with

4

reasonable suspicion that Toliver had violated a law or a condition of his parole. Toliver alleged the KDOC parole officers and detectives had no such reasonable suspicion to enter his residence and conduct a search.

At the suppression hearing, on December 16, 2013, KDOC Parole Officer Tabitha Neubert was the only witness to testify. Neubert testified that she began supervising Toliver's parole on March 26, 2013. The next day, Toliver executed the Parole Agreement. This form set forth 12 requirements that Toliver agreed to comply with during his parole. These conditions, among other things, obligated Toliver to obey all laws, not possess weapons, not possess or take illegal drugs or alcohol, maintain employment, comply with all treatment programs, and follow the written guidelines pertaining to reporting, travel, and maintaining a residence.

Of particular relevance to this appeal, Toliver also agreed to condition 12 of the Parole Agreement which provided:

"**I agree to:**

**. . . .**

"**12. Search:**

"● Be subjected to a search of *my person, residence, and any other property under my control* by parole officers, any authorized parole staff, and department of corrections enforcement, apprehension and investigation officers with or without a search warrant and with or without cause.

"● Be subjected to a search of my person, residence, and any other property under my control by any law enforcement officer based on reasonable suspicion of violation of conditions of post-incarceration supervision, or reasonable suspicion of criminal activity." (Emphasis added.)

According to Neubert, on October 17, 2013, she was accompanied by KDOC Parole Officer David Quintanar along with Detectives Daniel Bortnick, Jayson Hubbard,

5

and Brian Johnson when she performed this first "home visit" to Toliver's apartment. The purpose of the visit was to verify that Toliver was actually residing at the address. According to Neubert, neither she nor the detectives had any reason to suspect Toliver was involved in criminal activity or had committed any parole violations.

Neubert explained that while Toliver had never been violent towards her or Quintanar, she was aware of a prior police report indicating that Toliver had been violent towards a law enforcement officer. As a result, she requested law enforcement assistance for safety reasons. At Toliver's apartment, however, Neubert also directed the detectives to assist her in the search of the residence.

When the KDOC parole officers and Reno County detectives arrived at the apartment, Toliver let them into the apartment building. Neubert advised Toliver that she "just need[ed] to see around." Toliver went back upstairs to his bedroom. Upon entering the apartment, Neubert noted that several relatives of Toliver were present. The KDOC parole officers and detectives then conducted "a walk-through" of the apartment. Neubert explained, "I wouldn't call it [a] search [at that point]. We always look around wherever we go in."

Neubert testified to three reasons she believed she had authority, pursuant to the Parole Agreement, to instruct the detectives to search Toliver's apartment. First, Quintanar told her that while "looking around" someone found alcohol in Toliver's kitchen; and under the Parole Agreement, Toliver is prohibited from drinking alcoholic beverages. Neubert acknowledged that she did not ask Toliver's relatives if they had brought the alcohol with them because Toliver, the only person living in the apartment, was "responsible for his residence."

Second, Neubert had been advised by a Reno County detective to "be observant" during the home visit because there might be stolen property in the apartment. During the

6

search of the apartment, Detective Bortnick observed a laptop computer. He asked Toliver who owned the laptop, and Toliver responded that "it belonged to his sister's boyfriend [or] husband." According to Neubert, however, Detective Bortnick seized the laptop because he suspected it was stolen.

Third, Neubert believed Toliver "was acting suspicious, like hovering around the corner of his bed." According to Neubert, Toliver "[j]ust seemed really nervous"; "he was just pacing back and forth and just acting fidgety and staying right there." As a result, Neubert directed Detective Johnson to search the bed, whereupon the detective found a small baggie of marijuana underneath the left corner of the bed. This was the same location where Toliver had been "hovering" prior to the search.

At the conclusion of the evidence and arguments, the district court took the motion to suppress under advisement. Shortly thereafter, on December 20, 2013, the district court ruled from the bench, denying the motion and making detailed factual and legal findings.

At the outset, the district court found the KDOC parole officers and detectives did not have any particularized reasonable suspicion that Toliver had engaged in criminal wrongdoing at the time they entered the apartment or immediately prior to discovery of the marijuana. Moreover, the district court found that prior to discovery of the marijuana it was questionable whether any parole violation had been shown.

The district court cited *State v. Bennett*, 288 Kan. 86, 200 P.3d 455 (2009), for the proposition that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee . . . *authorized by State law*, as long as such searches are not arbitrary or done for harassment purposes." (Emphasis added.) The district judge stated he had been unable to locate any Kansas law that authorized such searches; however, he determined "the law in Kansas is based [on]" KDOC's Internal Management Policies and Procedures (IMPP). The district court assumed that the IMPP

7

authorized such a search based on the language in Toliver's Parole Agreement. And, in the district court's estimation, in the absence of action by the Kansas Legislature, the IMPP controlled the legality of the search and seizure. The district court also found that, in keeping with condition 12 of the Parole Agreement, the search was not arbitrary or capricious.

In denying Toliver's motion to suppress, the district court ruled that while the evidence demonstrated that neither the KDOC parole officers nor the detectives had reasonable suspicion of any parole violation or crime, the search of the apartment was constitutional because Toliver signed the Parole Agreement which mandated that he was subject to suspicionless searches by the KDOC parole officers. The district court also concluded that the detectives were operating at the direction of Neubert.

The parties agreed to submit the case to the district court for a bench trial based on stipulated facts. The district court's denial of Toliver's motion to suppress evidence, however, was reserved for appeal. Toliver was convicted of possession of marijuana, in violation of K.S.A. 2014 Supp. 21-5706(b)(3), based upon the following stipulated facts:

"● On October 17, 2013, Tabitha Neubert, KDOC parole officer assigned to [Toliver], conducted a home visit at [Toliver]'s residence . . . , which is in Manhattan, Riley County, Kansas.

"● Accompanying Tabitha Neubert were David Quintanar, KDOC parole officer, Detectives Brian Johnson, Daniel Bortnick, and Jayson Hubbard.

"● At the residence, Tabitha Neubert made contact with . . . Toliver, who answered the door to his apartment complex and then returned upstairs to his apartment. [Toliver] appeared to have just woken up. There were other individuals in the residence besides [Toliver] and those who accompanied Tabitha Neubert; however, [Toliver] had indicated to Tabitha Neubert that he was the sole resident of the apartment.

"● Upon looking around the residence, an empty bottle for alcohol was found in the trash can in the kitchen in plain view. The parole officers determined this was in

8

violation of [Toliver]'s parole conditions. In addition, Tabitha Neubert observed [Toliver] acting suspicious, hovering and acting fidgety around his beds.

"● Based on [Toliver]'s parole conditions the officers believed they had reasonable suspicion to search [Toliver]'s residence. Detective Johnson lifted the mattress of [Toliver]'s bed, where he had been located, and found a cellophane wrapper that appeared to contain marijuana. Detective Hubbard later tested this item and it field tested positive for THC.

"● At the residence [Toliver] made a statement nearly identical to 'That's my weed.' A parole officer asked when [Toliver] last ingested marijuana and he stated recently.

"● After being arrested and transported to the Riley County Police Department and after being advised of Miranda [Toliver] told Detective Hubbard that a woman brought the marijuana over to his house and left it. [Toliver] stated he found it when he woke up, so he put it under his mattress to keep someone from stealing it or one of the children from taking it. [Toliver] stated he intended to call the woman and return it to her; however, he would not give Det. Hubbard her name."

On May 5, 2014, Toliver was sentenced to 6 months' probation with an underlying jail term of 60 days. Toliver then filed this timely appeal. Of note, during the pendency of this appeal Toliver successfully completed his misdemeanor probation.

Subsequent to the filing of the appellant's and appellee's briefs, our court issued an order that read, in relevant part:

"Based on the record on file in the office of the Clerk of the Appellate Courts, it appears K.S.A. 2012 Supp. 22-3717(k) may be applicable to the search at issue in this case. Accordingly, because neither party cited or referenced this statute in the briefs on appeal, the parties are directed to file supplemental briefing. . . . The submission should address the following question:

"'Does K.S.A. 2012 Supp. 22-3717(k) apply to this case? If so, what is the effect, if any, of this statute upon the issue on appeal—whether the search of Toliver's residence violated the 4th Amendment to the United States Constitution?'"

9

Both parties filed supplemental briefs prior to oral arguments.

### THE RIGHT OF KDOC PAROLE OFFICERS TO SUBJECT PAROLEES TO SUSPICIONLESS SEARCHES AND SEIZURES UNDER THE FOURTH AMENDMENT

When, as in this case, the material facts to a district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court exercises unlimited review. *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014).

Unreasonable searches and seizures are prohibited by the Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and § 15 of the Kansas Constitution Bill of Rights. *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007). The exclusionary rule, a judicially created remedy, operates to protect Fourth Amendment rights through deterrence by preventing the use of unconstitutionally obtained evidence against the subject of the illegal search/seizure. *State v. Daniel*, 291 Kan. 490, 496, 242 P.3d 1186 (2010), *cert. denied* 131 S. Ct. 2114 (2011).

Of particular relevance to this appeal, parolees and probationers "'have a reduced expectation of privacy, thereby rendering certain intrusions by governmental authorities "reasonable" which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands.'" 5 LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 10.10(c), p. 533 (5th ed. 2012).

Preliminarily, the parties' arguments in the district court, the district court's ruling, and the parties' initial briefs on appeal were all premised upon a misunderstanding of Kansas law—that the Kansas Legislature had *not* authorized suspicionless searches of

10

parolees. On the contrary, at the time Toliver executed the Parole Agreement, K.S.A. 2014 Supp. 22-3717(k)(2) specifically authorized KDOC parole officers to conduct suspicionless searches of parolees without a search warrant and without cause. K.S.A. 2014 Supp. 22-3717(k)(2) and (3) provide:

> "(2) *Parolees* and persons on postrelease supervision are, and *shall agree in writing to be, subject to search or seizure by a parole officer* or a department of corrections enforcement, apprehension and investigation officer, at any time of the day or night, with or without a search warrant and with or without cause. Nothing in this subsection shall be construed to authorize such officers to conduct arbitrary or capricious searches or searches for the sole purpose of harassment.
>
> "(3) Parolees and persons on postrelease supervision are, and shall agree in writing to be, subject to search or seizure by any law enforcement officer based on reasonable suspicion of the person violating conditions of parole or postrelease supervision or reasonable suspicion of criminal activity. Any law enforcement officer who conducts such a search shall submit a written report to the appropriate parole officer no later than the close of the next business day after such search. The written report shall include the facts leading to such search, the scope of such search and any findings resulting from such search." (Emphasis added.)

Our court acknowledged this statute in *State v. Chapman*, 51 Kan. App. 2d 401, 409, 347 P.3d 700 (2015). We understood that, as amended in 2012, this statute mandated that parolees agree, in writing, to be subject to warrantless search or seizure by a KDOC parole officer at any time, with or without cause, and by any law enforcement officer based on reasonable suspicion of a parole violation or criminal activity. L. 2012, ch. 70, secs. 2 and 3; see *Chapman*, 51 Kan. App. 2d at 413. We will return to *Chapman* later in our analysis.

In Toliver's supplemental brief he concedes that, as a parolee, he has a "greatly diminished expectation of privacy," especially because he was informed that he may be subject to search or seizure by a KDOC parole officer as a condition of release on parole.

11

But Toliver also maintains "the initial entry into the home must be justified" by the provisions of K.S.A. 2014 Supp. 22-3717(k).

Toliver focuses his briefing on the presence of the detectives during the search: "Given that this was a search by law enforcement, and not KDOC, then K.S.A. [2014 Supp.] 22-3717(k)(3) should be the specific section to apply." According to Toliver, the detectives violated this statute because at the time the apartment was entered, as found by the district court, there was no reasonable suspicion that Toliver had violated his parole or engaged in criminal activity. Toliver characterizes the search as an impermissible "fishing expedition" that was arbitrary and capricious. At oral argument, in response to questions from our court, Toliver also maintained that K.S.A. 2014 Supp. 22-3717(k) only applies to searches of parolees, not their residences or property.

In its supplemental briefing, the State agrees with Toliver that, as a parolee, he has "significantly diminished" privacy interests. The State also agrees that K.S.A. 2014 Supp. 22-3717(k) is applicable to this case "because it sets the parameters for reasonableness of a search of a parolee in Kansas, while staying within the bounds of the Fourth Amendment." Citing *Samson v. California*, 547 U.S. 843, 844, 126 S. Ct. 2193, 165 L. Ed. 2d 250 (2006), the State considers K.S.A. 2014 Supp. 22-3717(k) an "expression that Kansas follows the precedent recognized by the Supreme Court of the United States; that suspicion-less searches of parolees are reasonable under the Fourth Amendment."

The State counters Toliver's argument that, under the circumstances, the detectives should not have participated in the search. Because K.S.A. 2014 Supp. 75-5217(a) gives authority to a KDOC parole officer to deputize any other officer with arrest power, the State extrapolates that "the legislators intended wide discretion for parole officers to conduct searches." The State concludes: "The statute clearly gives the parole officer authority to search the defendant's home; requesting the assistance of other law enforcement officers to assist in the search does not make it unreasonable."

12

Resolution of this appeal, as clarified by the parties' supplemental briefing and oral arguments, requires our interpretation of the Fourth Amendment to the United States Constitution and K.S.A. 2014 Supp. 22-3717(k) and will determine whether the KDOC parole officers' search of Toliver's residence was in compliance with our Constitution and Kansas law.

A summary of our rules of statutory construction is in order. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12, *cert. denied* 135 S. Ct. 91 (2014). Our most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Williams*, 298 Kan. 1075, 1079, 319 P.3d 528 (2014). To ascertain legislative intent, we first look at the statutory language, giving common words their ordinary meanings. *State v. Phillips*, 299 Kan. 479, 495, 325 P.3d 1095 (2014). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *State v. Brooks*, 298 Kan. 672, 685, 317 P.3d 54 (2014). Finally, where there is no ambiguity, our court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the legislature's intent. *Phillips*, 299 Kan. at 495.

At the outset, we read the plain language of K.S.A. 2014 Supp. 22-3717(k)(2) to require that parolees agree in writing to be subject to search or seizure by a KDOC parole officer, day or night, with or without a search warrant and with or without cause. Thus, in Kansas, Toliver was required to agree in writing to be subject to a suspicionless search and seizure by Neubert during the pendency of his parole. As discussed more fully later, K.S.A. 2014 Supp. 22-3717(k) thus establishes and defines a significantly diminished expectation of privacy for parolees in our state.

It is apparent, however, that the provisions of K.S.A. 2014 Supp. 22-3717(k) which legislatively defined Toliver's diminished privacy interests are at variance with condition 12 of the Parole Agreement that Toliver was required to sign prior to release on parole. While the statute addresses parolees being subject to suspicionless searches and seizures, the Parole Agreement required Toliver to be subjected "to a search of [his] person, *residence, and any other property under* [*his*] *control* by parole officers . . . with or without a search warrant and with or without cause." (Emphasis added.)

In short, the diminished privacy interests as formulated by K.S.A. 2014 Supp. 22-3717(k) relate only to the parolee personally, unlike the diminished privacy interests set forth in condition 12 of the Parole Agreement which relate not only to the parolee but also to the parolee's residence and property. Quite simply, condition 12 of the Parole Agreement more severely limits Toliver's privacy interests than Kansas law allows.

At this point we must address the dissent's reference to contrary dicta in *Chapman*. The issue in *Chapman* was whether the State could invoke K.S.A. 2012 Supp. 22-3717(k)(3) to support a police search of a parolee's home when the parolee had not actually signed a written parole agreement. The panel focused on statutory language which required that "a parolee 'shall agree in writing.'" 51 Kan. App. 2d at 413 (quoting K.S.A. 2012 Supp. 22-3717[k][3]). This court held that "a parolee's written agreement is, in fact, a condition for a law enforcement officer's search of a parolee's home based on reasonable suspicion." 51 Kan. App. 2d at 413.

The dissent states that although the *Chapman* panel thoroughly examined the statute, it "nowhere intimated that the statute may limit the object of the search to a parolee's *person*." Slip op. at 24 (Gardner, J., dissenting). But the issue that Toliver presents for our consideration was never raised, briefed, or argued in *Chapman*. And as our colleague properly points out at the beginning of her dissent, as a general rule, appellate courts will not address issues not raised and briefed on appeal. See *State v.*

14

*Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013). The *Chapman* panel was never asked whether the statutory language in K.S.A. 2014 Supp. 22-3717(k)(2) applies to the search of a home at all.

Moreover, "'[d]icta in a court opinion is not binding, even on the court itself, because the court should consider the issue in light of the briefs and arguments of counsel when the question is squarely presented for decision.' [Citation omitted.]" *State v. Cummings*, 297 Kan. 716, 725-26, 305 P.3d 556 (2013). Having considered the question squarely presented to us by the supplemental briefing and oral arguments, we cannot ignore the conflict between K.S.A. 2014 Supp. 22-3717(k)(2) and the Parole Agreement in the present case.

What is the constitutional significance of this variance between K.S.A. 2014 Supp. 22-3717(k)(2) and condition 12 of the Parole Agreement? Viewed simply based on the stipulated case facts, Toliver was not subjected to a suspicionless search and seizure as authorized by Kansas law. Rather, Toliver's residence was subjected to a suspicionless search as permitted by condition 12 of the Parole Agreement. Importantly, the fact that the Parole Agreement permitted a search and seizure not authorized by Kansas law implicates the Fourth Amendment.

The United States Supreme Court has upheld a California law, similar to our Kansas statute, which required that parolees "'shall agree in writing to be subject to search or seizure by a parole officer or other peace officer[, which is not arbitrary, capricious, or harassing,] at any time of the day or night, with or without a search warrant and with or without cause.' [Citation omitted.]" *Samson*, 547 U.S. at 846. In *Samson*, a police officer conducted a suspicionless search of Samson's person and the California Court of Appeals deemed the search constitutional under the authority of the California law. The United States Supreme Court subsequently granted certiorari to "answer a variation of the question . . . left open in *United States v. Knights*, 534 U.S. 112, 120,

15

n.6[, 122 S. Ct. 587, 151 L. Ed. 2d 497] (2001)," *i.e.*, whether a release condition can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search would not offend the Fourth Amendment. *Samson*, 547 U.S. at 847.

To determine the constitutionality of the search, the *Samson* majority examined the "'totality of the circumstances . . . by assessing, on the one hand, the degree to which [the search] intrude[d] upon [Samson]'s privacy and, on the other, the degree to which it [was] needed for the promotion of legitimate governmental interests.' [Citation omitted.]" 547 U.S. at 848. With respect to Samson's privacy interests, the majority explained that "parolees . . . have severely diminished privacy expectations by virtue of their status alone" because "'parole is an established variation on imprisonment of convicted criminals.'" 547 U.S. at 850-52. The majority then determined that Samson did not have "an expectation of privacy that society would recognize as legitimate," as it found "'salient'" the fact that the parole search condition was "'clearly expressed'" to Samson when he signed an order submitting to the condition. 547 U.S. at 852. The majority concluded that Samson's unambiguous awareness of the condition "'significantly diminished [his] reasonable expectation of privacy.'" 547 U.S. at 852.

Regarding California's concerns, the majority explained that states have "an '"overwhelming interest"'" in supervising parolees because 'parolees . . . are more likely to commit future criminal offenses.' [Citation omitted.]" 547 U.S. at 853. Likewise, "a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." 547 U.S. at 853. The majority then noted that the California Legislature's finding that imposing an individualized suspicion requirement upon parolee searches would undermine its ability to effectively supervise parolees and promote public safety made "eminent sense" due to California's 68% to 70% recidivism rate among its parolee population. 547 U.S. at 853-54.

16

After balancing Samson's diminished privacy interests with California's need to effectively supervise its parolees, the majority held: "The Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." 547 U.S. at 857. In reaching this conclusion, the majority rejected Samson's observation that "the majority of States and the Federal Government have been able to further similar interests in reducing recidivism and promoting reintegration, despite having systems that permit parolee searches based upon some level of suspicion." 547 U.S. at 855. The majority explained:

> "[Samson]'s reliance on the practices of jurisdictions other than California, however, is misplaced. That some States and the Federal Government require a level of individualized suspicion is of little relevance to our determination whether California's supervisory system is drawn to meet its needs and is reasonable, taking into account a parolee's substantially diminished expectation of privacy." 547 U.S. at 855.

In Toliver's case, like *Samson*, we are presented with a state law that defines a parolee's diminished expectation of privacy and authorizes what the legislature deems a reasonable search under the circumstances. This legislative formulation of a parolee's diminished privacy interests and authorization to search is critical for Fourth Amendment analysis. Although *Samson* focused on the legality of a California statute, it has been interpreted as standing for the proposition that "'[t]he Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee' when such a search *is authorized by state law*. [Citation omitted.]" (Emphasis added.) *United States v. Mabry*, 728 F.3d 1163, 1167 (10th Cir. 2013), *cert. denied* 134 S. Ct. 1354 (2014).

In *Mabry*, the Tenth Circuit Court of Appeals explained how individual state laws relating to parolee searches may set the parameters of what constitutes a reasonable search and seizure under the Fourth Amendment:

17

"[I]n *Samson*, '[t]he Court noted "that some States and the Federal Government require a level of individualized suspicion," and strongly implied that in such jurisdictions a suspicionless search would remain impermissible.' [Citations omitted.] Thus, '[p]arolee searches are . . . an example of the rare instance in which the contours of a federal constitutional right are determined, in part, *by the content of state law*.' [Citation omitted.]" (Emphasis added.) 728 F.3d at 1167 (quoting *United States v. Freeman*, 479 F.3d 743, 747 [10th Cir. 2007]).

Our Supreme Court also has weighed in regarding *Sampson* in *State v. Bennett*, 288 Kan. 86, 200 P.3d 455 (2009). In *Bennett*, the Kansas Supreme Court considered whether a condition of probation that required the probationer to submit to random, nonconsensual, suspicionless searches violated the Fourth Amendment. Noting that the United States Supreme Court in *Sampson* posited the question before the Court as "'whether a suspicionless search, conducted under the authority of this statute [, Cal. Penal Code Ann. § 3067[a] [West 2000], violates the Constitution,' [citation omitted,]" our Supreme Court concluded: "After *Samson*, it is clear that parolees may be subjected to suspicionless searches *authorized by state law* as long as such searches are not arbitrary or done for harassment purposes." (Emphasis added.) *Bennett*, 288 Kan. at 95-96.

Consistent with *Sampson*'s and *Bennett*'s holdings, we conclude that K.S.A. 2014 Supp. 22-3717(k) defines the diminished privacy interests of Kansas parolees and sets the parameters by which a parolee may be subject to a reasonable search and seizure under the Fourth Amendment. Consistent with the diminished privacy interests, K.S.A. 2014 Supp. 22-3717(2) allows KDOC parole officers to subject parolees to suspicionless searches and seizures. The statute does not, however, empower KDOC parole officers to further infringe upon the privacy expectations of parolees by sanctioning the suspicionless searches of their residences and other property under their control as provided by the Parole Agreement. As a result, the variance between K.S.A. 2014 Supp. 22-3717(k)(2) and Toliver's Parole Agreement is consequential. While the Kansas

18

Legislature has clearly authorized suspicionless searches of a parolee, it has not authorized suspicionless searches of the parolee's residence or property.

Without the essential statutory authorization promulgated in K.S.A. 2014 Supp. 22-3717(k)(2), we conclude that condition 12 of the Parole Agreement providing for suspicionless searches of Toliver's residence or any other property under the parolee's control violates the Fourth Amendment. As a result, the contraband seized from Toliver's residence should have been suppressed under the exclusionary rule. See *State v. Morris*, 276 Kan. 11, Syl. ¶ 8, 72 P.3d 570 (2003).

Our holding that K.S.A. 2014 Supp. 22-3717(k) does not authorize the suspicionless search of a parolee's residence is based upon a plain reading of the statute. This plain reading, however, is supported by a related 2012 amendment. In the same act which amended K.S.A. 2014 Supp. 22-3717, the legislature also amended K.S.A. 2014 Supp. 21-6607, the statute controlling the conditions of probation or suspended sentence. See L. 2012, ch. 70, secs. 1 and 2. In this amendment, the legislature directed that probationers shall "be subject to searches of the defendant's *person, effects, vehicle, residence and property* by a court services officer, a community correctional services officer and any other law enforcement officer based on reasonable suspicion of the defendant violating conditions of probation or criminal activity." (Emphasis added.) K.S.A. 2014 Supp. 21-6607(c)(5). It is noteworthy that in 2012, in the very same act, the Kansas Legislature established very different provisions relating to search and seizure for individuals in analogous postconviction situations—parolees and probationers.

Our dissenting colleague asserts it is unreasonable to conclude from this difference in language that the legislature intended to grant parolees greater privacy rights than probationers. But it is not for us to question the wisdom or second-guess the actions of the legislature in its formulation of differing privacy expectations and authorizing different kinds of searches for parolees and probationers. That is not the court's role. We

19

are required, however, to follow the well-known rule of statutory construction: Where the legislature has demonstrated an ability to express its intent through clear statutory language, courts will not read that same intent into another statute where the legislature has omitted such language. See *State v. Hopkins*, 295 Kan. 579, 584, 285 P.3d 1021 (2012); *State v. Lovett*, 17 Kan. App. 2d 450, 453, 839 P.2d 53, *rev. denied* 252 Kan. 1094 (1992).

We must take the legislature at its word. If it intended for Kansas parolees to be subject to searches of their residences and property, it is apparent the legislature knew how to draft that specific language—if only because the legislature did, in fact, *use that specific language* in the same act when addressing the search and seizure rights of probationers.

Given our holding suppressing the contraband found in Toliver's apartment, we decline to address the second issue raised by Toliver that the search of Toliver's apartment by the detectives violated K.S.A. 2014 Supp. 22-3717(k)(3) because the law enforcement officers did not have reasonable suspicion that Toliver had violated the conditions of his parole or engaged in criminal activity.

Toliver's conviction is reversed, and the case is remanded to the district court with directions to grant the motion to suppress evidence and for further proceedings.

\* \* \*

GARDNER, J., dissenting: I respectfully dissent. Toliver does not argue, other than through a passing argument in his supplemental brief, that the search of his residence was arbitrary, capricious, or harassing, nor did he raise such an argument below. Accordingly, that issue is not before us. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014) (issues not raised before the trial court cannot be raised on appeal); *State v. Llamas*, 298

20

Kan. 246, 264, 311 P.3d 399 (2013) (points raised incidentally in a brief and not argued are deemed waived and abandoned). Further, the State did not cross-appeal from the district court's finding that the detectives lacked reasonable suspicion to search Toliver's residence. So that issue is not before us either. See *State v. Ortega*, 300 Kan. 761, 777-78, 335 P.3d 93 (2014) (appellees must cross-appeal adverse rulings to obtain appellate review of those issues). The central issue for resolution is, therefore, whether the detectives' search of Toliver's residence at the request of a parole officer violated Toliver's Fourth Amendment rights. I would answer that issue in the negative.

First, as the Kansas Supreme Court recognized in *State v. Bennett*, 288 Kan. 86, 92, 200 P.3d 455 (2009), parolees have a more limited expectation of privacy than do free citizens or probationers:

> "The United States Supreme Court has explained that a person's reasonable expectations of privacy depend on the level of freedom that person enjoys in society. Persons under state control—such as probationers, parolees, and prisoners—exist on a '"continuum" of state-imposed punishments' and thus enjoy more limited privacy than do free citizens. *Samson v. California*, 547 U.S. at 850. The Court has found that incarcerated prisoners have no reasonable expectation of privacy and can be searched at any time for any reason. *Hudson v. Palmer*, 468 U.S. 517, 530, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). Parolees have some expectation of privacy, although that expectation is greatly diminished."

As a parolee, Toliver's expectation of privacy was greatly diminished.

That diminished expectation of privacy extends not only to the parolee's person, but to his or her home. We have noted that "parolees have a greatly diminished expectation of privacy, even in their homes, particularly when the parolee has been informed that he or she may be subject to property searches as a condition of release." *State v. Haffner*, 42 Kan. App. 2d 205, 209, 209 P.3d 734 (2009). Thus, the government's

21

intrusion on a parolee's privacy may be supported by a diminished level of suspicion. See *Samson,* 547 U.S. at 850-57 (upholding California law requiring parolees to consent to random, suspicionless searches); *United States v. Knights*, 534 U.S. 112, 122, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001) (upholding the warrantless search of a probationer's home that was supported by reasonable suspicion and authorized as a condition of probation); *Griffin v. Wisconsin,* 483 U.S. 868, 870-80, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987) (concluding that the special needs of Wisconsin's probation system make the warrant requirement impracticable and justify a state regulation allowing the warrantless search of a probationer's home upon "reasonable grounds").

Secondly, when we examine whether a search is based on reasonable suspicion, we "place[] great emphasis on the subject's knowledge of the conditions of his parole or probation and the fact that the subject had signed a written acknowledgement of the conditions of his releasesee." *State v. Chapman*, 51 Kan. App. 2d 401, 413, 347 P.3d 700 (2015); see, *e.g.*, *Haffner*, 42 Kan. App. 2d at 209-10; *State v. Anderson*, 40 Kan. App. 2d 69, 70-72, 188 P.3d 38 (2008), *rev. denied* 287 Kan. 766 (2009); *State v. Uhlig*, 38 Kan. App. 2d 610, 616-17, 170 P.3d 894 (2007), *rev. denied* 286 Kan. 1185 (2008). Thus we follow the lead of the United States Supreme Court, which "has placed great emphasis on a parolee's knowledge of the conditions of his or her parole." *Chapman*, 51 Kan. App. 2d at 411.

Here, the parties stipulated that Toliver had signed on March 27, 2013, as one of the conditions of his release on parole, the following "search" provision.

Toliver agreed to:
- Be subject to a search of his person, residence, and any other property under his control by parole officers, any authorized parole staff, and department of corrections enforcement, apprehension, and investigation officers with or without a search warrant and with or without cause.

22

- Be subject to a search of his person, residence, and any other property under his control by any law enforcement officer based on reasonable suspicion of violation of conditions of postincarceration supervision or reasonable suspicion of criminal activity.

Accordingly, Toliver knew and had expressly agreed that one condition of his parole was that his residence could be searched by a parole officer or police officer under the stated conditions.

The relevant statute does not restrict that search condition of parole, but expressly incorporates that agreement in stating that parolees are, and shall agree in writing to be, subject to search:

> "(k)(1) Parolees and persons on postrelease supervision shall be assigned, upon release, to the appropriate level of supervision pursuant to the criteria established by the secretary of corrections.

> "(2) Parolees and persons on postrelease supervision are, and shall agree in writing to be, subject to search or seizure by a parole officer or a department of corrections enforcement, apprehension and investigation officer, at any time of the day or night, with or without a search warrant and with or without cause. Nothing in this subsection shall be construed to authorize such officers to conduct arbitrary or capricious searches or searches for the sole purpose of harassment.

> "(3) Parolees and persons on postrelease supervision are, and shall agree in writing to be, subject to search or seizure by any law enforcement officer based on reasonable suspicion of the person violating conditions of parole or postrelease supervision or reasonable suspicion of criminal activity." K.S.A 2014 Supp. 22-3717(k).

This statute does not attempt to designate *the object* of the search. It does not address the persons, places, or property to be searched, as evidenced by its lack of

23

specification of any terms such as the "person, residence, or any other property under the parolee's control." Instead, the focus of the statute is on *who* may conduct the search and *under what circumstances*, not on who or what may be searched. This statute, reasonably construed, thus does not limit the search to the parolee's "person" but instead means that parolees are subject to search in accordance with or coextensive to their written agreements. That written agreement in this case, as in most if not all other parolees' cases, includes not only the parolee's person but also the parolee's residence and any other property under the parolee's control.

The majority acknowledges that it should refrain from reading something into the statute that is not readily found in its words. *State v. Brooks*, 298 Kan. 672, 685, 317 P.3d 54 (2014). Yet it does so here in construing the plain language of the statute to include words it does not include, *i.e.*, "the person" of the parolee. Those words are not expressly stated in the statute.

Nor are those words reasonably implied, as is demonstrated by the sole case to examine the statute after its relevant amendments in 2012. In *Chapman*, 51 Kan. App. 2d at 409-13, we read the statute to apply to the search of a parolee's residence. Although we thoroughly examined the statute, we nowhere intimated that the statute may limit the object of the search to a parolee's *person*. Instead, we unflinchingly applied the terms of the statute to include the search of a parolee's residence. Although the specific issues in *Chapman* focused on the absence of a written agreement and valid consent, surely our court would not have applied this statute in the context of a search of a parolee's residence had the *plain language* of that statute restricted the object of the search to a parolee's person.

The relevant statute was drafted and enacted with knowledge of our precedents, not in ignorance of them. We "presume[ ] that the legislature acted with full knowledge and information about the statutory subject matter, prior and existing law, and the judicial

24

decisions interpreting the prior and existing law and legislation." *State v. Bee*, 288 Kan. 733, 738, 207 P.3d 244 (2009). Those precedents establish not only the limited expectation of privacy for parolees but also the importance of the written agreement to search as a condition of parole.

Further, as the majority notes, in 2012 the legislature amended the statute controlling the conditions of probation to state that probationers shall "be subject to searches of the defendant's person, effects, vehicle, residence and property" based on reasonable suspicion that the defendant violated conditions of probation or was engaged in criminal activity. K.S.A. 2014 Supp. 21-6607(c)(5). To find that the legislature *at the same time* amended the parolee statute to limit parolee searches to only their "persons," thus granting parolees a greater expectation of privacy than probationers, is unreasonable. Our court is to construe statutes "to avoid unreasonable or absurd results." *State v. James*, 301 Kan. 898, 903, 349 P.3d 457 (2015); *cf. State v. Kershaw*, 302 Kan. 772, 782, 359 P.3d 52 (2015) (refusing to construe statutory language to mean something different than it has traditionally meant when that result would not harmonize with a related statute).

Accordingly, I would find that the 2012 amendments to K.S.A. 2014 Supp. 22-3717(k) worked no change in the traditional understanding that when a search of a parolee is justified, it may extend to the parolee's person, residence, or any objects under his or her control. Thus Toliver's residence was subject to search, as agreed in the written conditions of his parole, by those persons designated in and under the conditions specified in K.S.A. 2014 Supp. 22-3717(k).