Gardner, J.,
dissenting: I respectfully dissent. Toliver does not argue, other than through a passing argument in his supplemental brief, that the search of his residence was arbitrary, capricious, or harassing, nor did he raise such an argument below. Accordingly, that issue is not before us. See State v. Kelly, 298 Kan. 965, 971, 318 P.3d 987 (2014) (issues not raised before the trial court cannot be raised on appeal); State v. Llamas, 298 Kan. 246, 264, 311 P.3d 399 (2013) (points raised incidentally in a brief and not argued are deemed waived and abandoned). Further, the State did not cross-appeal from the district court’s finding that the detectives lacked *361 reasonable suspicion to search Tolivers residence. So that issue is not before us either. See State v. Ortega, 300 Kan. 761, 777-78, 335 P.3d 93 (2014) (appellees must cross-appeal adverse rulings to obtain appellate review of those issues). The central issue for resolution is, therefore, whether the detectives’ search of Tolivers residence at the request of a parole officer violated Toliver’s Fourth Amendment rights. I would answer that issue in the negative.
First, as the Kansas Supreme Court recognized in State v. Bennett, 288 Kan. 86, 92, 200 P.3d 455 (2009), parolees have a more limited expectation of privacy than do free citizens or probationers:
“The United States Supreme Court has explained that a person’s reasonable expectations of privacy depend on the level of freedom that person enjoys in society. Persons under state control—such as probationers, parolees, and prisoners—exist on a "’continuum” of state-imposed punishments’ and thus enjoy more limited privacy than do free citizens. Samson v. California, 547 U.S. at 850. The Court has found that incarcerated prisoners have no reasonable expectation of privacy and can be searched at any time for any reason. Hudson v. Palmer, 468 U.S. 517, 530, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). Parolees have some expectation of privacy, although that expectation is greatly diminished.”
As a parolee, Toliver’s expectation of privacy was greatly diminished.
That diminished expectation of privacy extends not only to the parolee’s person, but to his or her home. We have noted that “parolees have a greatly diminished expectation of privacy, even in their homes, particularly when the parolee has been informed that he or she may be subject to property searches as a condition of release.” State v. Haffner, 42 Kan. App. 2d 205, 209, 209 P.3d 734 (2009). Thus, the government’s intrusion on a parolee’s privacy maybe supported by a diminished level of suspicion. See Samson, 547 U.S. at 850-57 (upholding California law requiring parolees to consent to random, suspicionless searches); United States v. Knights, 534 U.S. 112, 122, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001) (upholding the warrantless search of a probationer’s home that was supported by reasonable suspicion and authorized as a condition of probation); Griffin v. Wisconsin, 483 U.S. 868, 870-80, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987) (concluding that the special needs of Wisconsin’s probation system make the warrant requirement impracticable and justify a state regulation allowing the warrantless search of a probationer’s home upon “reasonable grounds”).
*362 Secondly, when we examine whether a search is based on reasonable suspicion, we “place[] great emphasis on the subject’s knowledge of the conditions of his parole or probation and the fact that the subject had signed a written acknowledgement of the conditions of his releasesee.” State v. Chapman, 51 Kan. App. 2d 401, 413, 347 P.3d 700 (2015); see, e.g., Haffner, 42 Kan. App. 2d at 209-10; State v. Anderson, 40 Kan. App. 2d 69, 70-72, 188 P.3d 38 (2008), rev. denied 287 Kan. 766 (2009); State v. Uhlig, 38 Kan. App. 2d 610, 616-17, 170 P.3d 894 (2007), rev. denied 286 Kan. 1185 (2008). Thus we follow the lead of the United States Supreme Court, which “has placed great emphasis on a parolee s knowledge of the conditions of his or her parole.” Chapman, 51 Kan. App. 2d at 411.
Here, the parties stipulated that Toliver had signed on March 27, 2013, as one of the conditions of his release on parole, the following “search” provision.
Toliver agreed to:
• Be subject to a search of his person, residence, and any other property under his control by parole officers, any authorized parole staff, and department of corrections enforcement, apprehension, and investigation officers with or without a search warrant and with or without cause.
• Be subject to a search of his person, residence, and any other property under his control by any law enforcement officer based on reasonable suspicion of violation of conditions of postincarceration supervision or reasonable suspicion of criminal activity.
Accordingly, Toliver knew and had expressly agreed that one condition of his parole was that his residence could be searched by a parole officer or police officer under the stated conditions.
The relevant statute does not restrict that search condition of parole but expressly incorporates that agreement in stating that parolees are, and shall agree in writing to be, subject to search:
“(k)(l) Parolees and persons on postrelease supervision shall be assigned, upon release, to the appropriate level of supervision pursuant to the criteria established by the secretary of corrections.
*363 “(2) Parolees and persons on postrelease supervision are, and shall agree in writing to be, subject to search or seizure by a parole officer or a department of corrections enforcement, apprehension and investigation officer, at any time of the day or night, with or without a search warrant and with or without cause. Nothing in this subsection shall be construed to authorize such officers to conduct arbitrary or capricious searches or searches for the sole purpose of harassment.
“(3) Parolees and persons on postrelease supervision are, and shall agree in writing to be, subject to search or seizure by any law enforcement officer based on reasonable suspicion of the person violating conditions of parole or postrelease supervision or reasonable suspicion of criminal activity.” K.S.A 2014 Supp. 22-3717(k).
This statute does not attempt to designate the object of the search. It does not address the persons, places, or property to be searched, as evidenced by its lack of specification of any terms such as the “person, residence, or any other property under the parolee’s control.” Instead, the focus of the statute is on who may conduct the search and under what circumstances, not on who or what may be searched. This statute, reasonably construed, thus does not limit the search to the parolees “person” but instead means that parolees are subject to search in accordance with or coextensive to their written agreements. That written agreement in this case, as in most if not all other parolees’ cases, includes not only the parolee’s person but also the parolee’s residence and any other property under the parolee’s control.
The majority acknowledges that it should refrain from reading something into the statute that is not readily found in its words. State v. Brooks, 298 Kan. 672, 685, 317 P.3d 54 (2014). Yet it does so here in construing the plain language of the statute to include words it does not include, i.e., “the person” of the parolee. Those words are not expressly stated in the statute.
Nor are those words reasonably implied, as is demonstrated by the sole case to examine the statute after its relevant amendments in 2012. In Chapman, 51 Kan. App. 2d at 409-13, we read the statute to apply to the search of a parolee’s residence. Although we thoroughly examined the statute, we nowhere intimated that the statute may limit the object of the search to a parolee’s person. Instead, we unflinchingly applied the terms of the statute to include *364 the search of a parolee’s residence. Although the specific issues in Chapman focused on the absence of a written agreement and valid consent, surely our court would not have applied this statute in tire context of a search of a parolee s residence had the plain language of that statute restricted the object of tire search to a parolees person.
The relevant statute was drafted and enacted with knowledge of our precedents, not in ignorance of them. We “presume[ ] that the legislature acted with full knowledge and information about the statutory subject matter, prior and existing law, and the judicial decisions interpreting the prior and existing law and legislation.” State v. Bee, 288 Kan. 733, 738, 207 P.3d 244 (2009). Those precedents establish not only the limited expectation of privacy for parolees but also the importance of the written agreement to search as a condition of parole.
Further, as tire majority notes, in 2012 the legislature amended the statute controlling tire conditions of probation to state that probationers shall “be subject to searches of the defendants person, effects, vehicle, residence and property” based on reasonable suspicion that the defendant violated conditions of probation or was engaged in criminal activity. K.S.A. 2014 Supp. 21-6607(c)(5). To find that the legislature at the same time amended the parolee statute to limit parolee searches to only their “persons,” thus granting parolees a greater expectation of privacy than probationers, is unreasonable. Our court is to construe statutes “to avoid unreasonable or absurd results.” State v. James, 301 Kan. 898, 903, 349 P.3d 457 (2015); cf. State v. Kershaw, 302 Kan. 772, 782, 359 P.3d 52 (2015) (refusing to construe statutory language to mean something different than it has traditionally meant when that result would not harmonize with a related statute).
Accordingly, I would find that the 2012 amendments to K.S.A. 2014 Supp. 22-3717(k) worked no change in the traditional understanding that when a search of a parolee is justified, it may extend to the parolee s person, residence, or any objects under his or her control. Thus Tolivers residence was subject to search, as agreed in the written conditions of his parole, by tiróse persons designated in and under the conditions specified in K.S.A. 2014 Supp. 22-3717(k).